# COMPOSITE EXHIBIT "A"

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

In re:

Chapter 15
Case No. ______________________

PETROFORTE BRASILEIRO DE PETROLEO LTDA.

Debtor in a Foreign Proceeding
____________________________________/

**DECLARATION OF TRUSTEE AND LIST OF ADMINISTRATORS, PARTIES, AND ENTITIES PURSUANT TO 11 U.S.C. §1515 AND BANKRUPTCY RULE 1007(a)(4)**

I, Dr. Afonso Henrique Alves Braga of São Paulo, hereby declare as follows:

1. I am over the age of 18 and, if called upon, could completely testify to all matters set forth in this statement based upon my own personal knowledge except for those portions specified as being otherwise. Because I have limited English skills, I was assisted by my Brazilian counsel, Henrique Rodrigues Forssell to draft this Declaration which has been explained to me by Mr. Forssell in Portuguese, my native language.

2. I was appointed Trustee within the meaning of 11 U.S.C. § 1502(6) in the pending bankruptcy proceeding of Petroforte Brasileiro de Petroleo Ltda. ("Debtor"), by the 18th Civil District Court of São Paulo, State of São Paulo, Brazil ("Brazilian Court"), on January 20, 2003. By virtue of the appointment by the Brazilian court, I as the Trustee am authorized to appear in this Court as a foreign representative of the bankruptcy proceeding in Brazil. True and correct copies of the Orders appointing me as Trustee and reflecting my continued appointment in that role are attached to the Verified Petition for Recognition of a Foreign Main Proceeding, being filed contemporaneously.

3. I hereby file the following list in accordance with Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure of the United States.

**Administrators in Foreign Proceedings of the Debtor**

4. The Trustee is not aware of any foreign proceedings, as that term is defined in 11 U.S.C. 101(23), of the Debtor other than this Chapter 15 Petition. The Trustee is the duly appointed "administrator" in the Brazilian proceeding.

**Parties to any U.S. Litigation in which the Debtor is a Party**

5. The Petitioner is not aware of any other litigation currently pending in the United States in which the Debtor is a party.

**Entities Against Whom Provisional Relief Is Being Sought**

6. Petitioner is not seeking interim relief at this time against any entities under 11 U.S.C. § 1519.

I declare under penalty of perjury under the laws of the United States of America, 28 U.S.C. §1746 that the foregoing is true and correct.

Dated this 26st day of February, 2014

AFONSO HENRIQUE ALVES BRAGA

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
www.flsb.uscourts.gov

In Re: Case No. ____________
Chapter 15

Petroforte Brasileiro de Petroleo Ltda.

Debtor in a Foreign Proceeding
_________________________________/

**DECLARATION UNDER PENALTY OF PERJURY TO ACCOMPANY PETITIONS, SCHEDULES, FILING FEE APPLICATIONS AND STATEMENTS FILED ELECTRONICALLY**

***Note: This declaration must be filed with each electronically filed initial petition or amended petition and must contain the imaged signature of the debtor. This declaration must also be filed with an initial schedule, Application to Pay Filing Fee in Installments, Application for Waiver of the Chapter 7 Filing Fee, SFA, Statement of Social Security Number, or Statement of Current Monthly Income (OBF 22) not filed with the initial petition or any amended schedules, SFA, Statement of Social Security Number, and/or Statement of Current Monthly Income (OBF 22) unless these documents contain an imaged signature of the debtor(s).***

**Check all documents that apply to this declaration:**

[ ] Application by Individual Debtor to Pay Filing Fee in Installments
[ x ] Voluntary petition signed by me on February 26th 2014
[ ] Schedules signed by me on ______________________
[ ] Statement of Financial Affairs signed by me on ________
[ ] Statement of Social Security Number(s) signed by me on ____________
[ ] Statement of *Current Monthly Income (OBF 22)* signed by me on ____________

[ ] Application for Waiver of the Chapter 7 Filing Fee for Individuals Who Cannot Pay the Filing Fee in Full or in Installments
[ ] Amended voluntary petition signed by me on ________________
[ ] Amended schedules signed by me on ______________________
[ ] Amended Statement of Financial Affairs signed by me on ________
[ ] Amended Statement of Social Security Number(s) signed by me on ____________
[ ] Amended Statement of *Current Monthly Income (OBF 22)* signed by me on ____________

I, Afonso Henrique Alves Braga as Trustee of Petroforte Brasileiro de Petroleo Ltda., the undersigned debtor(s) **hereby declare under penalty of perjury as follows**:

1. I have reviewed and signed the original(s) of the document(s) identified above and the information contained in the Verified Document(s) is true and correct to the best of my knowledge and belief.

2. I understand that Verified Document(s) filed in electronic form shall be treated for all purposes (both civil and criminal, including penalties for perjury) in the same manner as though signed or subscribed.

3. I understand that the Verified Document(s) will be filed by my attorney in electronic form in connection with the above captioned case and that I have received and reviewed copies of the Verified Document(s) I have signed.

4. I understand that my attorney is required by the court to retain the original signed Verified Document(s) for five years from date of discharge, dismissal or the conclusion of any pending appeals in this case and provide these documents to the court upon request at any time.

[signature]
**Signature of Debtor**
**(If non individual, authorized corporate representative)**

Afonso Braga as Truestee for Petroforte Brasileiro de Petroleo Ltda.
**Print or Type Name (and title if applicable)**

Gregory S. Grossman
**Print or Type Name of Attorney for Debtor**

_________________________________
**Signature of Joint Debtor (if applicable)**

_________________________________
**Print Name**

_________________________________
**Phone:**

# COMPOSITE EXHIBIT "B"



*I, Sandra Regina Mattos Rudzit, certified public translator, duly admitted and sworn by the Commercial Registry of the State of São Paulo, Brazil, hereby certify that a copy of a document was submitted to me, written in Portuguese, the translation of which is as follows:*

**JUDICIARY**

SÃO PAULO

18th Lower Civil Central Court of the Judicial District of the Capital City of the State of São Paulo

Case No. 01.074201-8

Examined, etc.

NOVA UNIÃO S.A. AÇÃCAR E ÁLCOOL filed for BANKRUPTCY on behalf of PETROFORTE BRASILEIRO PETRÓLEO LTDA., claiming to be creditor of the amount disclosed in the complaint - according to the Note attached to pages which lacks a plausible reason for nonpayment and was protested - and requesting a summons to file an answer or an elision deposit, plus contingent fees under penalty of default and also attaching documents of pages.

An action for a writ of mandamus was filed against the Court of Ribeirão Preto, which reflected on this case according to pages 424, and it was dismissed thereafter.

Defendant was summoned; the answer of pages 679 stated that the protest was undue, and Defendant and Plaintiff's Lessee were bound by an agreement, whereby funds were granted to Lessee to plant two crops, the agreement entered into with the other company was terminated, Defendant was taken by surprise with the protest, notes were issued in an irregular manner after the new Executive Board took over, the financial contribution is clear, the notes were withdrawn on the location where Defendant is not located, the credits are uncertain, there was a judicial dispute at the Lower Court of Ribeirão Preto, the notes did not meet the legal requirements, the amount was not ascertained, the action being denied.

The Regulatory Appeal was stayed according to pages 1896, and this case continued to be in course; the decision of Bankruptcy on pages 2133 was rendered, and measures were taken by the Bankruptcy Trustee. An INTERLOCUTORY APPEAL, according to pages 2254, stayed the proceedings, and procedures were followed to restore the court diligences. A deposit in cash was made by BRADESCO SEGUROS at pages 2538, and others on pages 2601 and following, and more on pages 2628.

Another deposit was made by BRADESCO SEGUROS on pages 2655, following several court decisions were rendered for the blockage of those amounts.

A curative order was granted on pages 2716 which submitted it to the Expert evidence. Afterwards, thousands of documents were attached. The seizure on pages 6004 maintained the blockage of the amounts. The Public Prosecutors' Office pronounced itself on pages 6071.

The Attorneys of Defendant resigned on pages 6134 and the representative thereof is aware according to pages 6135. The expert report is on pages 6161; Plaintiff pronounce himself on pages 6462, Defendant's retained expert report is on page 6473 – and the expert was ordered to pronounce himself on Defendant's retained expert report according to pages 6507 and afterwards the case records were submitted to the Judge.

AFTER THE REPORT, I HEREBY DECIDE

SUMMARY JUDGMENT

In fact, the matter is merely legal, and other evidence is unnecessary, and the case is qualified for a decision according to the phase of the action; in addition, the Centennial

Court of São Paulo understands that: "**the summary judgment shall be rendered when it shows that it is unnecessary to produce evidence**" (Case law of the Court of Appeals of the State of São Paulo - RJTJSP), besides, based on the case laws, once the evidence is presented to the Judge of the case, it is incumbent upon him to substantively analyze such need (2nd State Court of Civil Appeals of the State of São Paulo - TACIVSP – Revised Appeal No. 487413 – 4th Chamber – 1st State Court of Civil Appeals of the State of São Paulo – TACIVSP – Appeal No. 734963, 1st Vacation Chamber, on February 12, 1998). Also see Court Reports (RT) No. 750/304 and Case law of the Court of Appeals of the State of São Paulo – RJTJSP No. 203/125.

And the seizure of the Superior Court of Appeals states:

"**If the conditions that enable the summary judgment are present, it is the Judge's duty, and not faculty, to proceed this way**" (See Superior Court of Appeals – 4th Panel – Justice Gazette (DJU) of September 19, 1990 – pages 9513).

DE MERITIS

In fact, the Seizure of pages 2701 accepted Defendant's argument that there was curtailment of defense, and the first decision was annulled; the evidence determined by the Centennial Court was produced as follows.

Actually, as mentioned before, the protests withdrawn by the INCORRECT DECISION are absolutely valid; and the seizure ruined any and all claims to this purpose, the claim for defective action was dismissed, and the uncertainty or insecurity sought by Defendant are not in place, it is also noticed that all the notes are accompanied by tax documents and proof of receipt of the goods; and at no time Defendant denies that he removed fuel, shows unpunctuality, as contained in the Protests. The notes in which the complaint is grounded are formally correct, and meet the necessary requirements, thus, it is fully enforceable, and the default is confirmed. None of the claims of the answer were proved to be true, and the default was also verified, other than that, all evidence as stated on the case records was admitted.

In the same way, the doubtful statements of the answer were also not grounded. Nothing was proved in regard to the thesis of the answer, and the evidence of the settlement of the debt made available by the so called "Officer" AIRTON DE FREITAS – who was proven, in the case records, to be the caretaker of a ranch belonging to ARI NATALINO in the city of Atibaia – is not credible. Such claim is fragile, and is not in compliance with the required Bylaws provisions, and the evidence on pages 2118 shows that the caretaker was used for illegal purposes.

EXPERT WITNESS REPORT AND RETAINED EXPERT REPORT

The exquisite expert witness report on pages 6170 indicated that the studies were performed on Plaintiff's principal place of business in the City of Serrana, at 350 km from this Capital City; on pages 6171, it shows that Defendant and its affiliates incurred expenses and distributed capital in the amount of R$4,756,857.38 – all performed through the affiliated company AGROBAU; the credit of such company was verified on the accounting of Plaintiff, as determined by the Expert on pages 6172. And the company SOBAR – another affiliated company – received the products provided for industrialization.

The Court-appointed Expert states that Defendant removed from the establishment of Plaintiff a great amount of ethanol and sugar, and afterwards he resold these products, and debited it to Defendant; the credit of R$5,055,676.37 was verified – all of this after the facts informed on pages 6179.

Thus, the debt of Defendant is actually greater than the amount claimed in the complaint; the appraisal was performed in the case records of the case processed by the Court of Appeals, and the provision of services of industrialization of sugar cane was evidenced – and the

SANDRA REGINA MATTOS RUDZIT - Tradutora Pública e Intérprete Comercial - Português - Inglês - Matrícula na JUCESP nº 1688 - CPF 082.060.018-08 - RG 8.222.837
Rua Matias Aires, 402 - 9º andar - 01309-020 - São Paulo - SP - Brasil - Fone/Fax: 55-11-3155-7383 - e-mail: just@just.trd.br - www.just.trd.br



Sandra Regina Mattos Rudzit

compensation was established at the agreement according to pages (illegible)11 to 18 of the case records; the appraisal of the milling was made based on the existing documentation of Plaintiff's premises on the Daily Production Register, therefore, endowed with credibility.

Finally, the Expert confirms that Defendant violated the amounts relating to the prices – incurring in losses to the Tax Authorities, not making the payments due, and obligating Plaintiff to issue complementary tax invoices, thus evidencing the credit of Plaintiff, ascertained based on the correct market price of the product (pages 6206).

The Expert also verified that Plaintiff did not have a Trade Note Register; and pages 6214 informed that the third copy of the trade note was issued based on the payment of the irregular trade notes, and issued by a person who did not have powers to do so, according to pages 2118; and in court query of pages 6220 the Expert confirms that the amount of the goods removed by Defendant surpasses the amount of distribution of capital, thus the credit is rightful.

Therefore, it is evidenced that Defendant owes to Plaintiff an amount greater that that mentioned in the notes – and the Expert evidence states the full enforceability of the amounts, and the collection is lawful; the Service agreement did not authorize the removal of goods, or if they were to be removed they must be paid for; the report also states that, under the adversary proceeding, that the notes hold unequivocal guarantee, and as well determined on pages 6466, "**the thoroughly Expert evidence showed that the Defendant's group, at the time it managed the industry of Plaintiff, under-invoiced the supply of ethanol to Defendant**".

Finally, the statement of the Court-appointed Expert on pages 6507 resolved all questions on which the Defendant's attorney was basing himself; it is not relevant that tax invoice 8703 was not accounted for on Defendant's accounting, once the circumstances are against Defendant since he did not supply the Expert with his books, besides, the respective issuance is not interesting for the regularization of the accounting situation before tax authorities and the consent of Defendant is worthless for such issuance, and at this point, it is irrelevant to know if Defendant received such document or not once there was no attempt for suppression of the request, moreover there is the obvious irregular act performed by Defendant in view of the prices established – the amount of fifty cents per liter of ethanol was a fictitious price –, and that would subject Plaintiff to a tax assessment if he did not rectify the amount of such prices. The agreement did not even establish prices for the removal of products, which makes it clear that the Defendant's creditor is Plaintiff and not another company.

Thus, as verified above, the expert retained by the party could not suppress the conclusions of the Report; the origin of the debt was found and the business relationship between the parties was cleared, so it was obvious to perform the correction of the proceeding of Plaintiff, and since the debt was clear legal, the action must be confirmed, and there is no doubt about this conclusion.

JUDGMENT

From all that has been set out, I ADJUTICATE THE BANKRUPTCY of Defendant PETROFORTE BRASILEIRA PETRÓLEO LTDA., today at 12:00 p.m., stating its legal term on the 60th day prior to the date of the complaint, and establishing the period of 20 days for the filing of proof of claim. I hereby appoint as dative bankruptcy trustee the attorney AFONSO HENRIQUE ALVES BRAGA, considered by the Court as a reliable person, before the evident need to accelerate a proceeding that has been difficult from the start, with millions of labor creditors, with 33 (illegible) from the beginning, and having the collaboration of professionals that honor the Association they belong to. Please notify NOSSA CAIXA, urgently, so it is aware of the amount deposited in these case records. Court office, under the terms of articles 15 and 16 of the Bankruptcy Law, seal the establishments of the Bankrupted company by means of a court official, and the trustee must arrange a list of the affiliated companies and the collected assets and, in compliance with article 34 of the



TRADUTORA PÚBLICA

Bankruptcy Law, take the statement of the Bankrupted company, and notify it with the proper designation after these initial measures.

Publish, Register, Notify

City of São Paulo, October 20, 2003.

(sgd)

Luiz Beethoven Giffoni Ferreira

Judge

COPY WITHDRAWN AT THE COURT OF APPEALS OF SÃO PAULO

All pages are initialed.

*IN WITNESS WHEREOF I set my hand and seal to this translation.*

*São Paulo, February 5, 2010*

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública

rsi/contenc/alve1a.doc

GS17

**PODER JUDICIÁRIO**
SÃO PAULO

18ª VARA CÍVEL DO FORO CENTRAL DA COMARCA DA CAPITAL DO ESTADO - SP

PROCESSO Nº 01.074201-8.

Vistos, etc.

NOVA UNIÃO S.A. AçÚCAR E ALCOOL aforou pedido de FALÊNCIA de PETROFORTE BRASILEIRO PETRÓLEO LTDA., alegando ser credora da importância revelada na inicial, conforme Título juntado a fls., faltante razão plausível do não pagamento, realizado Protesto, pedindo citação para oferta de defesa ou elisão, mais sucumbência, sob pena de quebra, e j. documentos a fls.

Mandado de Segurança ajuizado em desfavor do E. Juízo de Ribeirão Preto, com repercussão neste feito, conf. fls.424, extinto a seguir.

Citada a Ré, na contestação de fls.679 revela do Protesto indevido, havendo vinculação contratual entre a Ré e a Arrendatária da Reqte., alocados recursos para que esta realizara duas safras, rescindido pacto com outra empresa e surpreendida a Reqda. com o Protesto, emitidos Títulos de forma irregular após assunção de nova Diretoria, evidente o aporte financeiro, sacadas as cártulas em local onde a reqda. não está sediada, incertos os créditos, ocorrente discussão judicial na Comarca de Ribeirão Preto, carecendo as cártulas dos requisitos legais, ilíquido o valor, de rigor extinção e alfim improcedente a pretensão.

Efeito suspensivo concedido a Agravo Regimental cf. fls. 1896, prosseguiu este; sobreveio a decisão de Quebra a fls.2133, providências pela Sindicatura a seguir. AGRAVO DE INSTRUMENTO conforme fls.2254 deferiu efeito suspensivo, desenvoltos a seguir procedimentos para reversão das diligências. A fls. 2538 depósito em dinheiro realizado pela BRADESCO SEGUROS, e outros a fls.2601 e segs., e mais a fls.2628.

Mais um depósito realizado a fls.2655 pela BRADESCO SEGUROS, sucedendo-se a partir daí várias ordens judiciais para bloqueio desses valores.

Saneador a fls.2716, que mandou à Perícia. Juntaram-se a seguir milhares de documentos. O V.Aresto de fls.6004 manteve o bloqueio dos valores. FALOU O MINISTÉRIO PÚBLICO A FLS.6071.

Renúncia dos Patronos da Ré a fls.6134 e ciente o Representante desta cf. fls.6135. Laudo Pericial a fls.6161; falou o A. a fls.6462, e a fls.6473 o Laudo do Assistente do R. - determinou-se a fala do Perito sobre o Laudo do Assistente da Ré, conforme fls. 6.507, e a seguir vieram os autos conclusos.

Após o relato, D E C I D O.

DO JULGAMENTO ANTECIPADO

Com efeito, a questão é meramente de direito, desnecessárias outras provas, estando os autos aptos a padecer sentença no estado da lide; demais disso, no sentir da Corte Centenária de S.Paulo, "o julgamento antecipado da lide deve acontecer quando evidenciada a desnecessidade de produção de provas" (RJTJSP 197/149), além do que, na esteira de remansoso entendimento jurisprudencial, dirigindo-se as provas ao Juiz do feito, a ele cabe aferir, subjetivamente, dessa necessidade (2º TACIVSP - Apel.c/Rev.

6518

**PODER JUDICIÁRIO**
SÃO PAULO

18ª VARA CÍVEL DO FORO CENTRAL DA COMARCA DA CAPITAL DO ESTADO - SP

nº 487.413 - 4ª Câmara - 1º TACIVSP - Apel. nº 734.963, 1ª Câmara de Férias, j. aos 12.02.98). Ver ainda RT 750/304 e RJTJSP 203/125.

E precioso Aresto do V. SUPERIOR TRIBUNAL DE JUSTIÇA revela:

> "Presentes as condições que ensejam o julgamento antecipado da causa, é dever do juiz, e não mera faculdade, assim proceder" (Ver STJ-4ª Turma - DJU de 19.09.90 - pág.9.513).

DE MERITIS

Com efeito, o V. Aresto de fls.2701 acolheu o argumento da Reqda., de que houve cerceamento de defesa, nulificada a decisão primeira; foi realizada a prova determinada pela Centenária Corte, conforme se examina a seguir.

Em verdade, como já se dissera anteriormente, na MALOGRADA SENTENÇA, os Protestos tirados são absolutamente válidos; e o V. Aresto copiado sepultou toda e qualquer alegação nesse sentido, afastada a alegação de carência, inocorrentes insegurança ou incerteza na forma buscada pelo Reqdo., notando-se que todas as cártulas estão acompanhadas de documentos fiscais, e de comprovantes de entrega das mercadorias; e em nenhum momento a Ré nega a retirada dos combustíveis, manifesta a impontualidade, consubstanciada nos Protestos. Os Títulos que embasam o pedido estão formalmente em ordem, e ocorrem todos os requisitos a eles indispensáveis, presente então sua plena exigibilidade, confirmado assim o inadimplemento. Das alegações da resposta nenhuma restou provada, comprovado também o inadimplemento, de resto admitido até como se vê dos autos.

Da mesma sorte, as copiosas alegações da peça de resposta caíram no vazio. Nada e nada se provou em favor da tese da contestação, e a prova de quitação da dívida, propiciada pelo tal "Diretor" AIRTON DE FREITAS - que se comprova nos autos ser caseiro de um sítio que ARI NATALINO detinha em Atibaia - não detém a menor credibilidade. Note-se a fragilidade dessa pretensão, e tanto mais que desobedecida a norma Estatutária para sua consecução, havendo a fls. 2118 a comprovação de que aquele caseiro foi usado para fins que não reverenciam o Direito.

DO LAUDO PERICIAL E DO ASSISTENTE

O excelente Laudo Pericial apontou a fls.6170 que os estudos realizaram-se na sede da A., em Serrana, à 350 Km desta Capital; deu conta a fls.6171 que a Reqda. e coligadas efetuaram despesas e fizeram aportes de capital no valor de R$-4.756.857,38 - tudo realizado a partir da empresa coligada AGROBAU; o crédito desta foi localizado na contabilidade da A., conforme revela o Perito a fls.6172. E a empresa SOBAR - outra coligada - recebeu os produtos fornecidos para industrialização.

Atesta o Perito do Juízo que a Reqda. retirou do estabelecimento da A. grande quantidade de álcool e açúcar, e ao depois revendido esses produtos, debitados alfim a débito da Ré, constatado o crédito de R$-5.055.676,37 - tudo após os levantamentos revelados a fls.6179.

Assim, como se vê, o débito em que incorre a Ré é em verdade maior que o valor exigido na inicial; a apuração desenvolveu-se nos autos do feito judicial fluente pelo E. Tribunal de Justiça, comprovada a prestação de serviços de industrialização em cana de açúcar - estando a remuneração prevista em Contrato conforme fls.11 a 18 dos autos; a apuração das moagens foi

CÓPIA EXTRAÍDA NO TRIBUNAL DE JUSTIÇA DE SÃO PAULO

8/3/2007

6519

PODER JUDICIÁRIO
SÃO PAULO

18ª VARA CÍVEL DO FORO CENTRAL DA COMARCA DA CAPITAL DO ESTADO - SP

realizada a partir da documentação existente no Estabelecimento da A., pelo Livro de Produção Diária, detendo ante isso manifesta credibilidade.

Finalmente, o Louvado dá conta de que houve infringência pela Ré dos valores relativos aos preços - incidindo em prejuízos ao Fisco, nem havendo os pagamentos revelados, obrigada a A. à emissão de NF complementar, evidenciado o crédito da Reqte., apurado a partir do correto preço de mercado do produto (fls.6206).

Apurou ainda o Perito que a A. não dispunha do Livro de Registro de Duplicatas; e a fls.6214 existe a informação de que as Triplicatas foram emitidas a partir da quitação irregular das Duplicatas, a partir de quem não detinha poderes para tal, conforme fls. 2.118; e no quesito de fls.6220 confirma o Louvado Judicial que o valor das mercadorias retiradas pela Ré supera o valor dos aportes, legitimado o crédito.

Assim, fica evidenciado que a Ré deve à A. valor maior que o mencionado nas cártulas - anotando a Perícia a plena exigibilidade dos valores, legítima a cobrança; e o Contrato de Prestação de Serviços não autorizava a retirada de mercadorias, senão obrigava aos pagamentos delas; . fica anotada, alfim, pelo Laudo, sob o contraditório, que os Títulos detém inequívoco lastro, e, como bem anotado a fls.6466, "mostrou o minucioso Laudo Pericial que o grupo da reqda., enquanto na administração da indústria da reqte., utilizou o odioso expediente de sub-faturar fornecimento de álcool à requerida".

Finalmente, a fala do Perito do Juízo a fls.6507 estancou todas as questões a que se apegou o nobre Acólito do Réu; pouco importa que a NF 8703 não haja sido recepcionada pela contabilidade da Ré, já que contra esta há que depor a circunstância de não haver fornecido seus Livros ao Perito, além do que a emissão fora de interesse da regularização da situação contábil perante o Fisco, despiciendo a anuência da Supda. para tal emissão, irrelevante, nesta altura, saber-se se recebeu ou não tal documento, já que nem houve tentame de elisão do pedido, além da manifesta irregularidade que a Ré cometeu constante dos preços praticados, fictício o valor de cinqüenta centavos o litro do álcool, sujeita a A., caso não retificados os valores desse preço, a autuação fiscal. e E o contrato nem ao menos fixava valores para a retirada de produtos, mostrando-se hialina a circunstância de que credora da Ré fôra a Autora, e não a outra empresa.

Assim, como se viu, não conseguiu o digno Vistor da parte elidir as conclusões do Laudo, assentada a origem da dívida, e trazida límpida a relação negocial envolvendo as partes, manifesta a correção do procedimento do Reqte., líquido e certo o débito, manifesta assim a procedência da ação, inocorrente dúvida alguma para tal conclusão.

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
SÃO PAULO - BRASIL

DISPOSITIVO

Pelo exposto, DECLARO ABERTA A FALÊNCIA da Requerida PETROFORTE BRASILEIRA PETRÓLEO LTDA. no dia de hoje, às 12:00 horas, declarando seu termo legal no 60º dia anterior à data do requerimento inicial, marcado o prazo de 20 dias paras as habilitações de crédito. Nomeio para Síndico Dativo o Advogado AFONSO HENRIQUE ALVES BRAGA,pessoa da confiança do Juízo, pela evidente necessidade de se conferir agilidade a um feito que já se inicia dificultoso, sabendo-se de milhares de credores trabalhistas, e com 33 volumes já na sua abertura, e mais vantagens de colaboração

CÓPIA EXTRAÍDA NO
TRIBUNAL DE JUSTIÇA DE SÃO PAULO

8/3/2007

6520

**PODER JUDICIÁRIO**
SÃO PAULO

18ª VARA CÍVEL DO FORO CENTRAL DA COMARCA DA CAPITAL DO ESTADO - SP

de profissional que honra a Ordem a que pertence. Oficie-se à NOSSA CAIXA para sabença do valor depositado nestes autos, com urgência. Proceda o Cartório conforme os Arts.15 e 16 da Lei de Quebras, lacrando-se todos os estabelecimentos da Falida por Oficial de Justiça, providenciando o Dr. Síndico a relação das empresas coligadas, e a arrecadação, cumprindo-se o Art.34 da Lei de Falências com tomada de declarações do falido, intimando-se, com designação oportuna, após ultimadas estas providências iniciais.

P. R. I.

S.Paulo, 20 de outubro de 2003.

LUIZ BEETHOVEN GIFFONI FERREIRA
Juiz de Direito

05 FEV 2010 1-23996

8/3/2007

[Sidebar: This document is a copy of the original signed digitally by CLAUDIA MARIA PEREIRA RAVACCI: to access the records of the proceeding, go to www.tjsp.jus.br, enter case number 0074201-23.2001.8.26.0100 and code 2S000000ETJMM.]

[Handwritten: 2991] [initials]

**[COURT SEAL] APPEALS COURT OF THE STATE OF SÃO PAULO**
JUDICIAL DISTRICT OF SÃO PAULO
CENTRAL CIVIL COURTHOUSE
18th CIVIL COURT
Praça João Mendes, s/n, 9 andar – salas n 911/913 - Centro
CEP 01501-900, São Paulo - SP
Phone: 2171-6150 - E-mail: afilho@tjsp.jus.br

DECISION

| | |
|---|---|
| Proceeding no. | **0074201-23.2001.8.26.0100/1810** |
| Class – Matter | **Other Non-specified Incidents (inactive) – Principal Matter of the Proceeding << No information available>>** |
| Plaintiff: | **Petroforte Brasileiro de Petroleo Ltda – Bankruptcy Estate** |
| Complete Identification Of Main Defendant << No information available>> | **Name of Principal Defendant << No information available>>** |

Judge Dr.: **Cláudia Maria Pereira Ravacci**

The record has been examined.

Pages 2972 et seq.: I accept the arguments of the Bankruptcy Trustee, and with the consent of the Public Attorney's Office, I AUTHORIZE the opening of the bankruptcy proceeding in the USA, pursuant to the terms mentioned above.

Make the Notifications.

São Paulo, January 7, 2014

DOCUMENT DIGITALLY SIGNED PURSUANT TO THE TERMS OF LAW 11.419/2006, IN ACCORDANCE WITH TEXT ON THE RIGHT MARGIN

[initials]
ANDRÉ DIAZ MONTIEL
Judicial Clerk I
Registration 318.59109

2991

TRIBUNAL DE JUSTIÇA · S P · 3 DE FEVEREIRO DE 1874

**TRIBUNAL DE JUSTIÇA DO ESTADO DE SÃO PAULO**
COMARCA DE SÃO PAULO
FORO CENTRAL CÍVEL
18ª VARA CÍVEL
Praça João Mendes s/nº, 9º andar - salas nº 911/913 - Centro
CEP: 01501-900 - São Paulo - SP
Telefone: 2171-6150 - E-mail: afilho@tjsp.jus.br

## DECISÃO

| | |
|---|---|
| Processo nº: | **0074201-23.2001.8.26.0100/1819** |
| Classe - Assunto | **Outros Incidentes Não Especificados (inativa) - Assunto Principal do Processo << Nenhuma informação disponível >>** |
| Requerente: | **Petroforte Brasileiro de Petroleo Ltda - Massa Falida** |
| Tipo Completo da Parte Passiva Principal << Nenhuma informação disponível >>: | **Nome da Parte Passiva Principal << Nenhuma informação disponível >>** |

Juiz(a) de Direito: Dr(a). **Cláudia Maria Pereira Ravacci**

Vistos.

Fls. 2972 e segs.: Acolho as razões do D. Síndico, e com a anuência do MP, AUTORIZO a abertura da falência nos EUA, nos moldes retro requerido.

Intime-se.

São Paulo, 07 de janeiro de 2014.

**DOCUMENTO ASSINADO DIGITALMENTE NOS TERMOS DA LEI 11.419/2006, CONFORME IMPRESSÃO À MARGEM DIREITA**

ANDRÉ DIAZ MONTIEL
Escrivão Judicial I
Matr. 318.591-0

Este documento é cópia do original assinado digitalmente por CLAUDIA MARIA PEREIRA RAVACCI. Para acessar os autos processuais, acesse o site www.tjsp.jus.br, informe o processo 0074201-23.2001.8.26.0100 e o código 2S000000ETJMM.

# EXHIBIT "C"

Alves Braga
attorneys

THE HONORABLE JUDGE OF THE 18TH CIVIL COURT OF THE CENTRAL COURTHOUSE OF THE JUDICIAL DISTRICT OF THE CAPITAL CITY OF THE STATE OF SÃO PAULO

[Sidebar – Illegible Court Receipt Stamp]

[Handwritten *...[illegible] copies that [illegible] by me, that confer with the originals*
*02 – 03 – 2014*

[initials]
ANDRÉ DIAZ MONTIEL I
Judicial Clerk
Registration 318.591-0

CASE: 0074201/2001
Incident 1819
Confidential Proceeding

**THE BANKRUPTCY ESTATE OF PETROFORTE BRASILEIRO DE PETRÓLEO LTDA. ("Petroforte Bankruptcy Estate")** represented herein by its appointed bankruptcy trustee hereby respectfully requests authorization to file judicial measures abroad, especially in the United States of America, based on the following facts:

1. As shown in the documents in the record, the Petroforte Bankruptcy Estate is a transnational bankruptcy, as it involves assets, rights and obligations in foreign jurisdictions, since the ex-controller, Ari Natalino da Silva used different transnational corporate structures to hide assets diverted from companies in the economic group, all of which are now declared bankrupt by extension.

2. There is an immediate need to collect assets located abroad, and to gather documents that may help with new judicial requests in Brazil and abroad. The collection of assets diverted abroad is not among the discretionary functions of the Bankruptcy Trustee, but rather, is a legal duty in the performance of his functions.

Avenida Nove de Julho, 3229, cj. 1001, Jd Paulista
01407-000 – São Paulo, SP
Tel: 55-11-3641-7968
Fax: 55-11-3151-2237
afonso.braga@terra.com.br

3. Currently, as a result of the different decisions declaring the extension of the bankruptcy to many companies, and decisions piercing the corporate veil of the companies affected by the extensions of bankruptcy, the Bankruptcy Estate has the legal duty to collect assets of the individuals and legal entities that are liable for the debts of the Petroforte Bankruptcy Estate, some of which are held or, at some time in the past were held, abroad.

4. Considering that the majority of banking operations abroad have as their central point banks located in the United States of America, since the global reference currency is the U.S. Dollar, the Bankruptcy Estate requests authorization to file an auxiliary bankruptcy proceeding, based on the Model Bankruptcy Law of the United Nations, approved at a General Meeting of the United Nations.

5. Through this proceeding, the Bankruptcy Trustee, in his capacity as the international representative of the Bankruptcy Estate, will file a request in one of the Federal Bankruptcy Courts[1] of the United States of America, requesting: (i) that the Petroforte bankruptcy be recognized in the United States; (ii) that the bankruptcy proceeding underway in Brazil be declared the main proceeding, thus ensuring that the resources gathered in the United States are repatriated to Brazil for distribution to the creditors within the Brazilian bankruptcy proceeding; and (iii) that the appointed bankruptcy trustee be declared the international representative of the Bankruptcy Estate.

6. In order to demonstrate the need to collect assets abroad, following are the shareholders of the companies that were declared bankrupt by extension:

   (i) Securinvest Holdings S.A., (declared bankrupt by extension "Securinvest") – Arnage Holdings Ltd. and Brooklands Holdings Ltd., both headquartered in the Cayman Islands;

   (ii) Turvo Participações (declared bankrupt by extension) – River South (declared bankrupt by extension) - headquartered in the British Virgin Islands and Securinvest (declared bankrupt by extension);

   (iii) Agroindustrial Espírito Santo do Turvo (declared bankrupt by extension) – Real Sugar Corp. and All Sugar International Inc. (declared bankrupt by extension) both headquartered in the British Virgin Islands;

   (iv) Kiaparack Part. e Serviços Ltda., (declared bankrupt by extension) – Redmond Business Corp. and Brementon Properties Inc. – both headquartered in Panama;

[initials]
ANDRÉ DIAZ MONTIEL

[1] In the United States of America, bankruptcy proceedings are submitted to the jurisdiction of the Federal Courts.

---

(v) Copaster Indústria e Comércio Ltda. (bankrupt by extension) – Blue Snow Holdings Inc. and Red Clud Ltd. (bankrupt by extension), both headquartered in the British Virgin Islands.

(vi) SECURITY INVESTMENTS L.L.C. – headquartered in Delaware, USA.

7. Regarding resources located abroad, the Central Bank of Brazil, in an inspection conducted at Banco Rural in Belo Horizonte, said, in relation to the bankrupt by extension companies Securinvest Holdings S.A., Agroindustrial Espírito Santo do Turvo, Agrícola Rio do Turvo, and Kiaparack Participações e Serviços Ltda., that:

*(i)* "The *River South* companies (share ownership in Turvo Participações), Real Sugar Corp. and All Sugar International Inc. (controllers of Agroindustrial Espírito Santo do Turvo and Agrícola Rio do Turvo) …"

*(ii)* "The funds were sent by a fund located abroad called The Rural High Yield Fund Limited, which in theory was acting on behalf of Brementon Properties Inc. (controller of Kiaparack, located in the British Virgin Islands). These funds were brought into the country for the purpose of increasing Kiaparack's capital stock."

*(iii)* "Once it had possession of these reais, Securinvest used a part thereof for exchange contracts to pay loans borrowed abroad. The dollars purchased for payment of 50% of the loans, plus interest payments **were sent** to First Bridgehouse Fund Administration, LLC, USA, which we understand to be its manager, due to the fact that it is headquartered at the same location as The Rural High Yield Fund Limited. Thus, **the source and use of these funds is exactly the same** as the obligation that the company had abroad and in Brazil with Banco Rural." (*emphasis added)*

8. The sections in the report by the Central Bank of Brazil reproduced above refer to companies declared bankrupt by extension in the bankruptcy proceeding of Petroforte, and serve only to demonstrate the need to file the applicable measures abroad to collect the assets of the companies declared bankrupt by extension.

9. There are also financial operations that were carried out by Herick da Silva, son of the controller of the Petroforte Group, with Trade Link Bank Grand Cayman, and one of them authorizes a debit in the amount of US$ 11,000,000 in current account TL 505502, an operation listed in the Federal Police Report.

[initials]
ANDRÉ DIAZ MONTIEL
Judicial Clerk I
Registration 318.59109
2975

---

10. Thus, in light of the foregoing, the Bankruptcy Estate must be authorized to adopt the appropriate judicial measures abroad, especially a request for an auxiliary bankruptcy in the United States of America, with the Appointed Bankruptcy Trustee indicated as the international representative of the Bankruptcy Estate.

Therefore, having complied with the necessary legal formalities, we request that this be granted, as a matter of justice.

São Paulo, June 25, 2013

[Signature]
**Afonso Henrique Alves Braga**

**OAB/SP 122.093**

[initials]
ANDRÉ DIAZ MONTIEL
Judicial Clerk I
Registration 318.59109



2972

EXCELENTÍSSIMO SENHOR DOUTOR JUIZ DE DIREITO DA 18ª VARA CÍVEL DO FORO CENTRAL DA COMARCA DE SÃO PAULO/SP.

ANDRÉ DIAZ MONTIEL
Escrivão Judicial I
Matr. 318.591-0

TJSP-18ºOF.CIVEL.CENTR-01/JUL/2013

Autos do Processo nº 074.201/2001
Incidente 1819
Segredo de Justiça

**MASSA FALIDA DA PETROFORTE - PETRÓLEO BRASILEIRO S.A. ("Massa Falida da Petroforte")**, neste ato representada por seu síndico dativo, vem, respeitosamente, requerer autorização para ingressar com medidas judiciais no exterior, em especial nos Estados Unidos da América, em razão dos seguintes fatos:

1. Conforme demonstram os documentos dos autos, a Massa Falida da Petroforte é uma falência transnacional, uma vez que envolve bens, direitos e obrigações em jurisdições alienígenas, já que o ex-controlador, Ari Natalino da Silva, utilizou diferentes estruturas societárias transnacionais com a finalidade de ocultar ativos desviados das empresas do grupo econômico, hoje todas já declaradas falidas por extensão.

2. Existe a imediata necessidade de efetuar arrecadações de ativos no exterior, bem como coletar documentos que eventualmente auxiliarão novos requerimentos judiciais no Brasil e no exterior. A arrecadação de ativos desviados para o exterior não está inserta dentro das funções de cunho discricionário do Síndico, tratando-se, em verdade, de dever legal no desempenho de suas atividades.

Avenida Nove de Julho, 3229, cj. 1001, Jd Paulista
01407-000 – São Paulo, SP
Tel: 55-11-3641-7968
Fax: 55-11-3151-2237
afonso.braga@terra.com.br

3. Atualmente, em razão das diversas decisões declarando a extensão da falência para inúmeras empresas, e decisões que desconsideraram a personalidade jurídica das empresas atingidas pelas extensões da falência, a Massa Falida tem o dever legal de arrecadar os bens das pessoas físicas e jurídicas que respondam pelos débitos da Massa Falida da Petroforte, sendo que alguns desses bens são mantidos, ou em algum momento foram mantidos no exterior.

4. Considerado que a grande maioria das operações bancárias no exterior tem como ponto central os bancos localizados nos Estados Unidos da América, já que a moeda de referencia global é Dólar Norte-Americano, a Massa Falida requer autorização para ajuizar um procedimento de falência auxiliar, baseado na Lei Modelo de Falências das Nações Unidas, aprovado em Assembléia Geral das Nações Unidas.

5. Através desse procedimento, o Síndico, na qualidade de representante internacional da Massa Falida, apresentará requerimento a uma das Varas Federais[1] de Falência dos Estados Unidos da America, requerendo: (i) seja a falência da Petroforte reconhecida nos Estados Unidos da América; (ii) seja declarado que o processo de falência em tramite no Brasil é o principal, desta forma assegurando que os recursos arrecadados nos Estados Unidos da América serão repatriados para o Brasil para distribuição aos credores dentro do processo de falência brasileiro; e (iii) seja o síndico dativo declarado o representante internacional da Massa Falida.

6. Com a finalidade de demonstrar a necessidade de arrecadar bens no exterior, abaixo seguem as composições societárias de empresas que foram declaradas falidas por extensão:

(i) Securinvest Holdings S.A. ( falida por extensão "Securinvest")- Arnage Holdings Ltd. e Brooklands Holdings Ltd., ambas sediadas nas Ilhas Cayman;
(ii) Turvo Participações (falida por extensão)- River South (falida por extensão) - sediada na Ilhas Virgens Britânicas e Securinvest (falida por extensão);
(iii) Agroindustrial Espírito Santo do Turvo (falida por extensão) - Real Sugar Corporation e All Sugar International Inc. (falidas por extensão) ambas sediadas nas Ilhas Virgens Britânicas;
(iv) Kiaparack Part. e Serviços Ltda. (falida por extensão) - Redmond Business Corp. e Brementon Properties Inc. - ambas sediadas no Panamá;

[1] Nos Estados Unidos da América os processos de falência são submetidas a jurisdição da Justiça Federal.

ANDRÉ DIAZ MONTIEL
Escrivão Judicial I
Matr. 318.591-0

(v) Copaster Indústria e Comércio Ltda. (falida por extensão) - Blue Snow Holdings Inc. e Red Clud Ltd. (falidas por extensão), ambas sediadas nas Ilhas Virgens Britânicas.

(vi) SECURITY INVESTMENTS L.L.C. – sediada em Delaware, EUA.

7. Em relação aos recursos localizados no exterior, o Banco Central do Brasil, em inspeção realizada no Banco Rural em Belo Horizonte, relatou em relação às empresas falidas por extensão Securinvest Holdings S.A., Agroindustrial Espírito Santo do Turvo, Agrícola Rio do Turvo e Kiaparack Participações e Serviços Ltda., que:

*(i)* "As empresas *River South* (participação acionária na Turvo Participações), Real Sugar Corp. e All Sugar International Inc. (controladoras da Agroindustrial Espírito Santo do Turvo e Agrícola Rio do Turvo) ...."

*(ii)* "Os recursos foram enviados por um fundo no exterior denominado The Rural High Yield Fund Limited, em tese, agindo por conta da Brementon Properties Inc. (controladora da Kiaparack localizada nas Ilhas Virgens Britânicas). Esses recursos foram internardos no país para fins de aumento de capital da Kiaparack."

*(iii)* "A Securinvest de posse desses reais utilizou uma parte para fazer contratos de câmbio para pagar empréstimos tomados no exterior. Os dólares comprados para quitação de 50% dos empréstimos mais parcelas de juros **foram enviados** para a First Bridgehouse Fund Administration, LLC USA, que por estar sediada no mesmo endereço do The Rural High Yield Fund Limited, entendemos ser sua administradora. Assim, **a origem e o destino dos recursos é exatamente a mesma** da obrigação que a empresa possuía no exterior e no Brasil junto ao Banco Rural." ***(grifei)***

8. As passagens do relatório do Banco Central do Brasil estampadas acima são referentes às empresas declaradas falidas por extensão nos autos da falência da Petroforte, servem apenas para demonstrar a necessidade de ingressar com as medidas cabíveis no exterior visando arrecadas ativos das empresas falidas por extensão.

9. Há, ainda, operações financeiras levadas a efeito por Herick da Silva, filho do controlador do Grupo Petroforte, com o Trade Link Bank Grand Cayman, sendo que em uma delas autoriza o débito do valor de US$ 11,000.000 na conta corrente TL 505502 – operação constante do Relatório da Polícia Federal.

ANDRÉ DIAZ MONTIEL
Escrivão Judicial I
Matr. 318.591-0

10. Assim, diante do acima exposto, necessário se faz seja a Massa Falida autorizada a adotar no exterior as medidas judiciais cabíveis, em especial pedido de falência auxiliar nos Estados Unidos da América, sendo o Síndico Dativo nomeado como representante internacional da Massa.

Termos em que, cumpridas as necessárias formalidades legais, pede-se e espera-se deferimento como medida de inteira justiça.

São Paulo, 25 de junho de 2013.

**Afonso Henrique Alves Braga**
**OAB/SP 122.093**

ANDRÉ DIAZ MONTIEL
Escrivão Judicial I
Matr. 318.591-0