UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

**In re:**                                                          Case No.  14-15408-RAM
                                                                    Chapter 15

**Petroforte Brasileiro de Petroleo Ltda.**

   **Debtor in Foreign Proceeding**       /

**MOTION TO QUASH, OR IN THE ALTERNATIVE, FOR PROTECTIVE
ORDER, IN CONNECTION WITH SUBPOENAS *DUCES TECUM*
FOR RULE 2004 EXAMINATION DIRECTED TO CITIGROUP, INC.,
SAFRA NATIONAL BANK OF NY AND ESPIRITO SANTO BANK**

Arnage Holdings Ltd., Banco Rural, Brooklands Holdings Ltd., Construtora Tratex S.A., Katia Rabello, Rural International, Inc., Rural Leasing S.A., Rural Securities Inc., Sabino Correa Rabello, Securinvest Holdings S.A. - formerly known as "Investcred Companhia Securitizadora de Creditos Financeiros" ("Securinvest"), Trade Link Bank, Trapezio S.A., Nora Rabello and Rural Securities International, Inc. (collectively, "Movants"), move to quash and/or for a protective order in connection with the *Subpoenas duces tecum for Rule 2004 Examination* (collectively, the "Subpoenas") directed to  Espirito Santo Bank ("Espirito"), Safra National Bank of NY ("Safra") and Citigroup, Inc. ("Citigroup"), issued on behalf of Dr. Afonso Henrique Alves Braga of Sao Paulo, Brazil, as trustee ("Trustee" or "Braga") for Petroforte Brasileiro de Petroleo Ltda., a debtor in a foreign bankruptcy proceeding in Brazil ("Debtor" or "Petroforte"). The relief sought herein is requested pursuant to 11 U.S.C. § 1521(a)(4), Federal Rules 26 and 45, as made applicable by Bankruptcy Rules 7026, 9016 and 9014, Bankruptcy Rule 2004 (to the extent applicable), and Local Rules 2004-1 (to the extent applicable), 7026-1 and 9014-1.

**I.    BACKGROUND**

A. **The Chapter 15 Proceeding**

On March 7, 2014, Braga petitioned this Court to recognize the Debtor's foreign bankruptcy proceeding, which has been pending for approximately twelve years in Brazil, as a foreign main proceeding under Chapter 15 of the Bankruptcy Code. The request was granted by the Court on March 28, 2014 [ECF No. 7] ("Recognition Order"). Paragraph 9 of the Recognition Order (emphasis added) provides that "[t]he Trustee is authorized to examine witnesses, take evidence or seek the delivery of information concerning the assets, affairs, rights, obligations or liabilities *of Petroforte and the Related Parties*[1] without further order of this Court."

On June 11, 2014, this Court entered its *Order Granting Motion of Trustee for Order Permitting Issuance of Subpoenas and Filings Under Seal and Related Relief* [ECF No. 16 (under seal)] ("Seal and Gag Order"). The Seal and Gag Order authorized Bragato issue subpoenas on third parties ( "Subpoenaed Parties") [2] and prohibited them from disclosing the existence or contents of the subpoenas to any other parties, despite it potentially implicating personal financial information, trade secrets or other confidential or proprietary business or commercial information of non-subpoenaed, third-parties targeted by the discovery ("Targets").

Following entry of the Seal and Gag Order and the issuance of numerous subpoenas, Bragareceived responses and documents ("Produced Documents") from various Subpoenaed

---

[1] The "Related Parties," also referred to therein as the "Related Entities," include 352 individuals and entities listed on Exhibit A to the Recognition Order.

[2] The "Subpoenaed Parties," as advised by the Trustee since entry of the Order Unsealing, include: (i) Safra National Bank of NY, (ii) Citigroup, Inc., (iii) Espirito Santo Bank, (iv) 1st BridgeHouse Asset Management, LLC, (v) Geofinance Limited, (vi) 1st United bank as successor to PineBank, (vii) Bank of Montreal, Bank of Nova Scotia, (viii) Bitran & Associates, (ix) Canadian Imperial Bank of Commerce, (x) Florida Peninsula Insurance, (xi) JP Morgan Chase & Co., Livenote, Inc., (xii) Merchants Bank, (xiii) Royal Bank of Canada, (xiv) Standard Chartered Bank, (xv) TD Bank, (xvi) UBS Bank, (xvii) Wells Fargo, (xviii) American Stock Exchange and (xix) Bank of America.

Parties, including Safra, Citigroup and Espirito. However, pursuant to the Court's September 10, 2014 *Order Granting In Part Motion To Extend Discovery Stay* [ECF No. 31] ("September 10th Order"), Braga was prohibited from viewing the Produced Documents related to the Targets' assets, until further consideration by the Court of the *Motion for Relief from Seal and Gag Order* [ECF No. 22].

On April 20, 2015, this Court entered an order under seal entitled *Order Granting in part Motion for Relief from Seal and Gag Order*[ECF No. 56] ("Order Unsealing"). [3] The order was unsealed on May 13, 2015. The Order Unsealing required, among other things, that the Seal and Gag Order be modified to lift the disclosure restrictions and allow Carlton Fields Jorden Burt, P.A. ("CFJB") to disclose the existence and contents of the subpoenas served on its clients Geofinance Limited ("Geofinance") and 1st BridgeHouse Asset Management, LLC ("BridgeHouse"), to its other clients whom were some of the Targets[4] of the subpoenas. The Order Unsealing further mandated that Braga serve all subpoenas issued to the Subpoenaed Parties on the Targets. The Targets are more specifically defined in the Subpoenas as the "Entities and/or Individuals"[5] in the following list:

- All Sugar International Inc.
- Ari Natalino da Silva.
- Arnage Holdings Ltd.
- Banco Rural.
- Brooklands Holdings Ltd.
- Construtora Tratex S.A.
- Debora Aparecida Gonsalves da Silva.

---

[3] The Order Unsealing provided that the Motion and Amended Motion to Seal and Restrict Disclosure [ECF Nos. 10 and 13 (under seal)] would remain sealed pending further order of the Court, but that all other documents under seal should be unsealed upon the order becoming final.

[4] The "Targets" of the subpoenas, include all Entities and/or Individuals (as defined in the subpoenas), many of whom are the Movants.

[5] For purposes of this Motion, the terms "Entities and/or Individuals" and "Targets" are used interchangeably.

- Flavio Barbosa do Amaral.
- Herick da Silva.
- Katia Rabello.
- Maria Aparecida l'essuto da Silva.
- Nathan Vinicius Goncalves da Silva.
- Petroforte Brasilciro de Petróleo Ltda.
- Real Sugar Corporation
- River South S.A.
- Rural International, Inc.
- Rural Leasing S.A.
- Rural Securities Inc.
- Sabino Corrêa Rabello.
- Securinvest Holdings S.A. — formerly known as "Invested Companhia Securitizadora de Creditos Financeiros"
- Trade Link Bank
- Trapezio S.A.

The Order Unsealing compelled Braga to make the Produced Documents available for review by CFJB, as counsel for certain Entities and/or Individuals, including Movants; and granted Movants thirty (30) days from the date of production to move for a protective order as to the subpoenas served on the Subpoenaed Parties. In the interim, Braga is bound by the September 10th Order prohibiting his review of the Produced Documents.

Of the Subpoenaed Parties served, Safra, Citigroup, Espirto, Bitran & Associates ("Bitran"), Standard Chartered Bank ("SCB"), and UBS Bank ("UBS") are the only entities that have produced documents to Braga, which in turn were produced on CFJB, as counsel for the Movants. The deadline to file a Motion for Protective Order as to Safra, Espirito and Citigroup is July 10, 2015, and is therefore dealt with herein. The deadline to file a Motion for Protective Order as to Bitran, UBS and SCB is August 6, 2015, and will thus be addressed by a later motion.

The central issue which has been before the Court for the past year, and has finally come to a head as a result of the expansive scope of the Subpoenas at issue, boils down to whether

Braga should have carte blanche to take discovery in the United States regarding the activities of unrelated third parties who have been improperly ensnared in an ever-expanding Brazilian bankruptcy proceeding, most of whom are not even Related Parties of the Debtor (as defined in the Recognition Order). As to the Targets that are not also Related Parties of the Debtor, such discovery is prohibited under the Recognition Order, § 1521 of the Bankruptcy Code, and Federal Rules 26 and 25, as made applicable by Bankruptcy Rules 7026, 9014 and 9016. As for the Targets such as Securinvest and Katia Rabello that are Related Parties under the Recognition Order, discovery should be prohibited and/or stayed pending resolution of the pending appeal in Brazil of the order reversing the Brazilian bankruptcy court's approval of the settlement described below. If the settlement is ultimately upheld, Braga will be stripped of all authority in this jurisdiction to go after the Rabello family or Rural Group assets since it will unwind the single transaction (the SOBAR sale/leaseback) that was the sole basis for extending the Petroforte bankruptcy to the their assets.

The movants have no objection to production by the Subpoenaed Parties of any documents relating to Petroforte, its principals or any of their assets, however, it appears that there are no such documents in the 18,000+ pages produced thus far.

B.     **The Brazilian Bankruptcy of Petroforte**

In order to understand the critical need for limiting Braga's discovery in this proceeding, it is essential for the Court to understand Securinvest's pending appeal to Brazil's Superior Court of Justice (STJ) (which is Brazil's highest appellate court for non-constitutional issues). As an initial matter, however, it is important to first note that there is no relationship between Securinvest's pending appeal to the STJ and its earlier, unrelated appeal to Brazil's Supreme Federal Court (STF) (which deals exclusively with appeals relating to constitutional issues).

Securinvest's appeal to the STF, which was resolved in October 2014, dealt exclusively with the initial extension of Petroforte's bankruptcy as to Securinvest in 2007.

In contrast, Securinvest's current appeal to the STJ relates to the intermediate appellate court's reversal of the Brazilian bankruptcy court's order approving a settlement between Securinvest and the Petroforte bankruptcy estate. The settlement involved the return to the bankruptcy estate of the only asset of Securinvest, the Rural Group, or the Rabello family, which ever had any alleged connection to Petroforte—an ethanol plant called SOBAR. A certified translation of Securinvest's appellate brief in that case is attached as **Exhibit 1**. A certified translation of the October 11, 2011 bankruptcy court order approving the settlement is attached hereto as **Exhibit 2**.

Because the settlement would in effect undo the SOBAR sale/leaseback transaction that was the *only* basis for extension of Petroforte's bankruptcy to Securinvest and Katia Rabello, the result of the STJ appeal will ultimately dictate whether the extension will remain in effect. If the settlement is ultimately upheld, Braga will lack authority to go forward in this jurisdiction against the assets of the Rabello family or Rural Group. Thus, until the STJ appeal is finally resolved, discovery should be prohibited and/or stayed as to the Related Targets.

## II.   SUMMARY OF ARGUMENT AND RELIEF REQUESTED

Movants move to quash the Subpoenas or in the alternative, request entry of a protective order since, among other things, the documents and information requested by Braga and produced by Espirito, Safra and Citigroup contains personal financial information, trade secrets or other confidential or proprietary business and commercial information of the Movants, most of whom are not even Related Parties of the Debtor.

As a result, such requests are unlikely to lead to the discovery of admissible evidence and improperly seek the disclosure of confidential information. The information requested as to the Targets that are not Related Parties is beyond the scope of permissible discovery in a Chapter 15 proceeding since such discovery is not controlled by Bankruptcy Rule 2004, but rather, by the narrow scope of 11 U.S.C. §1521(a)(4) and the Recognition Order.

There is nothing in the Recognition Order, §1521(a)(4) of the Bankruptcy Code or Bankruptcy Rules 7026, 9014 or 9016 that permits Braga to take discovery into the private and confidential finances of the Entities and/or Individuals, especially if they are not Related Parties. Consequently, Movants respectfully request the entry of an order quashing the Subpoenas pursuant to Federal Rule 45(d)(3)(A)(iii) and (B)(i), as made applicable by Bankruptcy Rule 9016.

The Trustee's attempt to obtain discovery as to the Targets that are Related Parties should also be prohibited, since Braga's requests are not geared towards the recovery of assets diverted from the bankruptcy estate. Rather, the discovery sought concerns third party assets that never had anything to do with Petroforte, its principals or the SOBAR plant. Such discovery would never be permitted in a regular U.S. bankruptcy proceeding since it defies principles of fundamental fairness and due process.

Moreover, if the settlement is ultimately upheld, Braga will have no basis to obtain discovery as to the assets of the Rabello family or Rural Group, since such assets will not be subject to the Petroforte estate. The instant Subpoenas must be quashed, either completely, or at least until the STJ issues its final ruling.

In the alternative, Movants respectfully request the entry of a protective order pursuant to Federal Rule 26(c) and/or 45(d)(3)(C), as made applicable by Bankruptcy Rules 7026, 9014 and

9016, modifying the Subpoenas to: (i) strike all document requests directed to Targets that are not also Related Parties, (ii) stay all discovery as to the Targets that are Related Parties until a final resolution of the pending STJ appeal, (iii) require Braga to set forth in detail particular transactions, assets, matters or topics for which it seeks discovery, which are related only to the assets of Petroforte, its principals or the SOBAR transaction, and (iv) limit the relevant time period to within two years prior to service of the Subpoenas. Additionally, the order should require Braga and his professionals to hold all confidential, financial and/or proprietary information in strict confidence and ensure that it is not made public.

### III. LEGAL ARGUMENT

#### A. Legal Standard

A party may invoke the inherent power of the court to secure protection from discovery which seeks confidential or privileged information. *Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F. 2d 1318, 1322 (Fed. Cir. 1990); *see also* Federal Rules 26(c) and 45(d)(3)(A) and (B). Federal Rule 45(d)(3)(A) *requires* a court, on timely motion, to quash or modify a subpoena if it: (i) "requires a person to comply beyond the geographical limits specified in Rule 45(c)" [i.e. more than 100 miles from where the deponent resides, is employed or regularly transacts business]; (ii) "requires disclosure of privileged or other protected matter" and "no exception or waiver applies"; or (iii) "subjects a person to undue burden." *See* Fed. R. Civ. P. 45(d)(3)(A)(ii), (iii) and (iv). Additionally, Rule 45(d)(3)(B)(i) authorizes a court to quash or modify a subpoena if it requires disclosure of a trade secret or other confidential research, development, or commercial information.

Alternatively, a court may elect to order appearance or production under specified conditions if the serving party "shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship" and "ensures that the subpoenaed person will be

Page **8** of **18**
101660096.1

reasonably compensated." Fed. R. Civ. P. 45(d)(3)(C). Additionally, pursuant to Federal Rule 26(c) a court, for good cause, may issue a protective order "to protect a person from annoyance, embarrassment, oppression, or undue burden or expense…."

### B. The Subpoenas should be quashed because it exceeds the scope of permissible discovery under 11 U.S.C. §1521(a)(4) and the Recognition Order.

The right to discovery under Chapter 15 is limited to "information concerning *the debtor* …." 11 U.S.C. § 1521(a)(4) (emphasis supplied); *In re British Am. Ins. Co.*, 488 B.R. 205, 225 n.16 (Bankr. S.D. Fla. 2013) ("After recognition, broad based inquiry in *the debtor's assets and affairs* is available …." (emphasis supplied)); *see also In re Glitnir Banki HF*, 2011 WL 3652764, at *5 (Bankr. S.D.N.Y. 2011) (explaining that in Chapter 15 proceeding "relevance [and entitlement to discovery] must be determined by reference to the various statutes and orders that empowered the Foreign Representative"). Rule 2004 "cannot expand [this limited right to take discovery] beyond what [section 1521(a)(4)] and order issued pursuant to the statute permit." *In re Glitnir Banki HF*, 2011 WL 3652764, at *6 & n.15 ("§ 1521(a)(4) may not authorize the 'fishing expeditions' associated with Rule 2004"). The trustee, therefore, "must ultimately demonstrate that its requests meet the statute's criteria."

As noted in the Court's Recognition Order [ECF No. 7, p. 2, n. 1], the Debtor is Petroforte Brasileiro de Petroleo Ltda., including its purported Related Parties (i.e. Arnage Holdings Ltd.; All Sugar International Inc.; Ari Natalino da Silva; Debora Aparecida Goncalves da Silva; Heric da Silva, Katia Rabello; Nathan Vinicius Goncalves da Silva; Real Sugar Corporation; River South S.A.; and Securinvest Holdings, S.A.). Consistent with the express limitations to discovery under 11 U.S.C. § 1521(a)(4), the Court's Recognition Order restricts Braga from taking discovery regarding any entity other than the Debtor or Related Parties. *See* Recognition Order [ECF No. 7, p. 5].

The Trustee's Subpoenas, however, demand production of documents and testimony relating to eleven other entities that are **_not_** Related Parties of the Debtor under this Court's Recognition Order:

(i) Arnage Holdings Ltd.;
(ii) Banco Rural;
(iii) Brooklands Holdings Ltd.;
(iv) Construtora Tratex S.A.;
(v) Maria Aparecida Pessuto da Silva;
(vi) Rural International, Inc.;
(vii) Rural Leasing S.A.;
(viii) Rural Securities Inc.;
(ix) Sabino Correa Rabello;
(x) Trade Link Bank; and
(xi) Trapezio S.A.

(collectively, the "Non-Related Targets").[6] In fact, the overwhelming majority of requests in each of the Subpoenas are boiler plate requests for generic bank and financial documents concerning the Non-Related Targets. For example, requests 1 – 15 and 17 in the Espirito subpoena (with 18 total requests), requests 1 – 16 in the Safra subpoena (with 18 total requests) and requests 1 – 16 Citigroup subpoena (with 17 total requests), seek blanket financial information of all "Entities and/or Individuals," including the Non-Related Targets, without any limitations as to specific assets, transactions or otherwise. Braga is not authorized to pursue discovery related to these Non-Related Targets unless it relates directly to Petroforte or the

---

[6] Of the Entities and/or Individuals defined in the Subpoenas, only the following are also defined as Related Parties under the Recognition Order (the following are collectively referred to as the "Related Targets"):

(i) All Sugar International Inc.;
(ii) Ari Natalino da Silva;
(iii) Debora Aparecida Goncalves da Silva;
(iv) Flávio Barbosa do Amaral Júnior;
(v) Heric da Silva;
(vi) Katia Rabello;
(vii) Nathan Vinicius Goncalves da Silva;
(viii) Real Sugar Corporation;
(ix) River South S.A.; and
(x) Securinvest Holdings, S.A.

101660096.1

SOBAR transaction. *In re Glitnir Banki HF*, 2011 WL 3652764, at *6 (quashing subpoenas to the extent they requested production of documents regarding non-debtors' affairs that did not relate directly to the debtors' affairs).

As with the subpoenas in *Glitnir*, Braga's Subpoenas request information regarding the Non-Related Targets' financial transactions, regardless of whether those financial transactions relate in any way to the Debtor's affairs. The following requests, which are the only two requests (out of 52 total across all three Subpoenas) set forth with any particularity, are in no way related to the Debtor, and thus, equally improper:

> *Safra subpoena*
>
> 17. Any and all Documents related to two wire transfers made by Constructora Tratex S.A. to You in the amount of $22,000,000 on or about February of 2001.
>
> *Espirito subpoena*
>
> 16. Any and all Documents related to a wire transfer made by "Securinvest Cia. Securitizadora de Creditos" to You in the amount of $6,000,000 on or about March 2003.

The foregoing involve transactions that have no connection to Petroforte, its principals or the SOBAR transaction, are for time periods more than ten years ago and seek confidential financial information having no bearing on this bankruptcy proceeding. In particular, request 17 in the Safra subpoena improperly solicits confidential information of a Non-Related Target (i.e. Construtora).

Ultimately, the Documents Produced are indicative of the abusive and sweeping nature of the foregoing document requests. Amongst the more than 18,000 pages of Produced Documents from the Subpoenaed Parties, none of the documents involve transactions with or assets of Petroforte or its affiliates. Of the 188 pages of documents produced by Espirito, two-thirds contain account opening paperwork and statements for Trade Link Bank (ESB-Petroforte000001 – ESB-Petroforte000120) and a few bank account statements for Banco Rural (ESB-

Petroforte000180 – ESB-Petroforte000188). Neither Trade Link Bank nor Banco Rural are Related Parties of the Debtor. Out of approximately 18,000 pages of Citigroup account history documents involving 16,489 transactions, not a single transaction related to Petroforte. Likewise, across approximately 900 pages of documents produced by Safra, the documents produced are bank statements, account forms and/or corporate documents for Banco Rural, Trade Link Bank and Rural Securities, none of which are Related Parties of the Debtor.

The only documents bearing any connection to even one of the Related Parties of the Debtor, are approximately 60 pages produced by Espirito containing account forms and corporate documents for Securinvest, a single $0 balance account statement, and a wire transfer confirmation for a $6,000,000 loan from Espirito to Securinvest (ESB-Petroforte000121 – ESB-Petroforte000180; ESB-Petroforte000189 – ESB-Petroforte000190). The foregoing documents have zero connection to Petroforte or the SOBAR sale/leaseback transaction that was the only basis for extending the bankruptcy to Securinvest in the first place.

In the end, Braga's discovery in this proceeding is yet another example of his misguided attempt to piggyback on a single disputed transaction involving a single asset, in an incredulous effort to reach hundreds of millions of dollars of third-party assets, none of which were ever related to the Petroforte group. The lack of a single document related to Petroforte's assets is indicative of the bad faith nature of this entire proceeding, which has expanded to over 350 entities and individuals, across numerous countries, brazenly seeking to confiscate the Rabello family and Rural group assets, in order to foot the ever-growing administrative tab of Braga and the estate. This sort of abuse would never be permitted in a traditional U.S. bankruptcy proceeding and should not be permitted here.

In the October 20, 2011 order approving the settlement under which Securinvest agreed

to return all of the assets which it allegedly diverted from Petroforte, the bankruptcy court observed that several other third parties engulfed into the Petroforte bankruptcy were discharged after returning all allegedly diverted assets to the Petroforte estate. As the court explained, these discharges were based on clear moral and legal principles inconsistent with Braga's aspiration of expropriating all of Katia Rabello's assets for the benefit of Petroforte's creditors:

> It is offensive to the Court that the Bankrupt parties be requested one penny more than what is correctly owed…. There is a principle that should apply to all human relations: the prohibition of unlawful enrichment…. [t]his humble magistrate does not have reasons to continue AD INFINITUM with the persecution of the assets of the bankrupt parties when there is already the main company, which was the object of the initiatives from Public Audit Office. NO JUDICIAL DECISION CAN SUPPORT ENRICHMENT WITH NO FAIR REASON.

The discovery sought by Braga in this proceeding in order to go after Movants' assets, which have no connection to Petroforte, its principals or SOBAR, similarly offends the principles of unlawful enrichment which were of paramount concern to the Brazilian bankruptcy court. Accordingly, the Court should quash the Subpoenas and put an end to the Braga's rogue expedition in this jurisdiction, since the discovery sought clearly exceeds the scope of permissible discovery under 11 U.S.C. §1521(a)(4), the Recognition Order, and Federal Rules 26 and 45, as made applicable by Bankruptcy Rules 7026 and 9016.

### C. The Subpoenas should be quashed under Federal Rule 45(d)(3)(A)(iii) because it requires the disclosure of privileged or other protected matter that is not subject to any exception or waiver.

Although the Subpoenas are directed to Citigroup, Safra and Espirito, Movants "have a sufficient privacy interest in the confidentiality of records pertaining to their personal financial affairs as to give them standing to challenge the subpoena[]." *Sierra Rutile Ltd. v. Katz*, No. 90 Civ 4913 (JFK), 1994 WL 185751, at *2 (S.D.N.Y. May 11, 1994); *see also, e.g., Blotzer v. L-3 Commc'ns Corp.*, 287 F.R.D. 507, 510 (D. Ariz. 2012); *In re Glitnir Banki HF*, 2011 WL

3652764, at *5 (Bankr. S.D.N.Y. 2011) (finding in Chapter 15 proceeding that, under Fed. R. Civ. P. 45, "individuals, whose banking records are subpoenaed, have a privacy interest in their personal financial affairs that gives them standing to move to quash a subpoena served on a non-party financial institution"). Specifically, the Subpoenas demand production of information relating to all of Movants' "financial transactions," including: "bank accounts," "cash accounts," "margin accounts," "IRA accounts," "cash management accounts," "checking accounts," "savings accounts," "securities," "mutual funds," "other financial products," "deposits," "payments," "monies," "remittances," "reimbursements," "invoices," "ledger entries," "journal entries," "real estate transactions," "loans or loan programs, includ[ing] notes," "credit or line of credit," "collateral," "checks," and "wire transfers."

Pursuant to Fed. R. Civ. P. 45(d)(3)(A), "the court … must quash or modify a subpoena that … requires disclosure of privileged or other protected matter, if no exception or waiver applies." A court also had discretion to quash or limit a subpoena that seeks disclosure of "trade secret or other … commercial information. Fed. R. Civ. P. 45(d)(3)(B). Having reviewed the Produced Documents, it is clear that the documents produced fall squarely within the restrictions required by Federal Rule 45, and thus, the Subpoenas should be quashed, especially as to the Non-Related Targets, since they seek confidential, financial information unrelated to Petroforte or the SOBAR transaction.

### D. If the Subpoenas are not conclusively quashed, they should be quashed pending resolution of the current appeal to the STJ.

Under Brazilian law, a third-party can only be drawn into a pending bankruptcy if it is part of a common economic group with the debtor and the relationship between the third-party and the debtors was established to defraud creditors. Even after eight years of litigation, including *ex parte* proceedings in various countries, Braga has never satisfied this threshold

requirement as to Securinvest and Katia Rabello, on the one hand, and Petroforte, on the other. This remains the key issue in Brazil. In the absence of such evidence, the extension of the bankruptcy to the Rural Group and Rabello family and the confiscation of their assets is unfounded, as is the discovery sought by the Subpoenas. The Court should note that the Caymen Islands' documentation which Braga has trumpeted in this proceeding and elseqwhere conclusively show no Petroforte connection whatsoever within Securinvest and its Caymen holding companies.

If the settlement is upheld it will effectively undo the only transaction providing a basis for forcing Securinvest and Katia Rabello into Petroforte's bankruptcy. Moreover, it will result in a 100% plus recovery to the Petroforte estate of all of the assets (i.e. SOBAR) which Securinvest was alleged to have diverted from Petroforte, plus substantial additional assets. Until the STJ appeal is finally resolved, discovery of the Related Targets' assets should be prohibited and/or stayed. Accordingly, the Subpoenas should be quashed.

> **E.    Alternatively, Movants are entitled to a protective order under Federal Rule 26(c) to limit the scope of the Subpoenas and protect Movants from annoyance, oppression and undue burden and expense.**

If the Court does not quash the Subpoenas, Movants request that the Court issue a protective order preventing the public disclosure of the Movants' financial information and limiting the use of that information for purposes of the Brazilian bankruptcy proceeding only. *See, e.g.*, *Chevron Corp. v. Berlinger*, 629 F. 3d 297, 306 (2d Cir. 2011) (affirming the issuance of a discovery order directing that "[t]he material produced under the district court's order shall be used by the petitioners solely for litigation, arbitration, or submission to official bodies, either local or international"); *Foley v. Kaplan*, 162 A.D. 2d 155, 156, 556 N.Y.S. 2d 92, 93 (1st Dep't 1990) (stating that where "discovery in this action will involve . . . financial statements [and] tax returns . . . confidentiality restrictions upon the products of discovery in this action, in the above

form, are appropriate").

Further, Movants request that the protective order provide that disclosure of confidential information (i) must only be made to the Trustee and its counsel and (ii) may only be used for purposes of a specific proceeding, which should, in this instance, be the pending Brazilian bankruptcy proceeding. The latter protection is commonly ordered. *See, e.g.*, *Sperry Rand Corp. v. Rothlein*, 288 F. 2d 245, 246, 249 (2d Cir. 1961) (finding that the "order entered by the district court enjoin[ing] the plaintiff from making any use whatsoever, in any proceeding other than the one pending in [that district court], of information and evidence disclosed by the defendants in the course of discovery proceedings in the pending case" was within the district court's discretion); *Patterson v. Ford Motor Co.*, 85 F.R.D. 152, 154 (W.D. Tex. 1980) (suggesting that discovery can be limited where "it can be shown that the discovering party is exploiting the instant litigation solely to assist litigation in a foreign forum"); *Milsen Co. v. Southland Corp.*, No. 71 C 575, 1972 WL 536, at *1 (N.D. Ill. Feb. 22, 1972) (finding sufficient good cause for the entry of a protective order under Fed. R. Civ. P 26(c) limiting use of discovery to the instant litigation where plaintiffs' counsel stated she intended to reveal the produced material to counsel for other plaintiffs with actions against the same defendants). In addition, the protective order should limit the scope of discovery to assets and/or transactions, if any, directly related to Petroforte or the SOBAR plant, within no more than two years prior to service of the Subpoenas. Accordingly, if this Court does not quash the Subpoenas, it should limit the highly personal and confidential discovery.

**WHEREFORE**, Movants respectfully requests the entry of an order: (i) granting the Motion; (ii) quashing the Subpoenas; or in the alternative; (iii) entering a protective order (a) providing that any documents produced must only be disclosed to the Trustee and counsel, (b)

providing that any documents produced may not be made public, (c) providing that any documents produced may not be used in connection with any proceeding other than the Debtor's pending bankruptcy in Brazil, (d) prohibiting discovery as to the Non-Related Targets' assets, (e) staying discovery as to the Related-Targets' assets until the pending STJ appeal is resolved, (f) requiring the Trustee to re-assert the requests in detail so as to cover only particular transactions, assets, matters or topics directly related to the assets of Petroforte or the SOBAR transaction, and (j) limiting the relevant time period of the requests to within two years prior to service of the Subpoenas; and (iv) providing for such other or further relief as the Court deems just and proper.

**Dated: July 10, 2015.**

        **Carlton Fields Jorden Burt, P.A.**
        4221 W. Boy Scout Blvd., #1000
        Tampa, FL 33607
        Telephone: 813-223-7000
        Facsimile: 813-229-4133

        */s/* Donald R. Kirk
        Donald R. Kirk
        Florida Bar No. 0105767
        Email: dkirk@cfjblaw.com

        **Carlton Fields Jorden Burt, P.A.**
        100 SE Second Street, Suite 4200
        Miami, Florida 33131
        Tel:   (305) 530-0050
        Fax:   (305) 530-0055

        /s/ Thomas Meeks
        Thomas Meeks
        Florida Bar No. 314323
        Email:  tmeeks@cfjblaw.com

        **Carlton Fields Jorden Burt, P.A.**
525 Okeechobee Blvd., Suite 1200
West Palm Beach, Florida 33401
Telephone:	(561) 659-7070
Facsimile:	(561) 659-7368
E-mail:  ablye@carltonfields.com


   */s/ Alexandra D. Blye*
  Alexandra D. Blye
  Florida Bar No. 71499


## CERTIFICATE OF SERVICE

I hereby certify that on **July 10, 2015**, I filed a copy of this Motion via CM/ECF, serving the following registered users:

- **Alexandra D Blye**     ablye@cfjblaw.com, kdemar@cfjblaw.com;wpbecf@cfdom.net
- **Edward H. Davis**     edavis@astidavis.com, tcrockett@astidavis.com
- **Annette C Escobar**     aescobar@astidavis.com, tcrockett@astidavis.com
- **Gregory S Grossman**     ggrossman@astidavis.com, ngonzalez@astidavis.com
- **Donald R Kirk**     dkirk@carltonfields.com, kathompson@carltonfields.com;jpelletier@carltonfields.com
- **Office of the US Trustee**     USTPRegion21.MM.ECF@usdoj.gov

and via U.S. mail on **July 13, 2015**, to the parties on the attached Mailing Matrix attached hereto.

   */s/ Donald R. Kirk*
  Donald R. Kirk