

**ORDERED in the Southern District of Florida on December 22, 2015.**

Robert A. Mark, Judge
United States Bankruptcy Court

---

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**

|  |  |  |
|---|---|---|
| In re: | ) | CASE NO. 14–15408–RAM |
|  | ) | CHAPTER  15 |
| PETROFORTE BRASILEIRO  DE | ) |  |
| PETROLEO LTDA. | ) |  |
|  | ) |  |
| Debtors. | ) |  |
|  | ) |  |

**ORDER DENYING MOTION TO DISMISS CASE**
**AND GRANTING IN PART MOTIONS FOR PROTECTIVE ORDER**

*Introduction and Summary of Ruling*

Dr. Afonso Henrique Alves Braga, as Trustee of Petroforte Brasileiro de Petroleo Ltda. (the "Trustee"), filed this chapter 15 bankruptcy case for the purpose of investigating "suspected

1

misappropriated assets of Petroforte" in this district. DE #2 ¶ 17. On March 27, 2014 the Court entered its Order Granting Recognition of Foreign Main Proceeding Pursuant to §1515 and 1517 of the Bankruptcy Code and Granting Related Relief [DE #7] (the "Recognition Order). As provided in §1521(a)(4), the Recognition Order authorized the Trustee "to examine witnesses, take evidence or seek the delivery of information concerning the assets, affairs, rights and obligations of Petroforte and the Related Entities." The "Related Entities" are the entities and individuals to which the Brazilian Bankruptcy Court extended the effects of the bankruptcy. A list of the "Related Entities," which includes some of the discovery targets referred to later in this Order, is attached as Exhibit A to the Recognition Order (the "Related Entities"). Because the Petroforte bankruptcy estate (the "Petroforte Estate") includes the Related Entities, these entities may also be referred to in this Order as "Debtors."

Shortly after entry of the Recognition Order, in a motion that remains under seal, the Trustee sought and obtained authority from this Court to issue subpoenas with gag provisions preventing subpoena recipients from communicating with other parties about the subpoenas. This relief was granted in the Court's June 11, 2014 Order Granting Motion of Trustee for Order Permitting Issuance of Subpoenas and Filings Under Seal (the

"Seal and Gag Order") [DE #16]. Subsequently, the Trustee's discovery strategy was successfully challenged by the law firm of Carlton Fields Jorden Burt, P.A. ("Carlton Fields") who learned about the Seal and Gag Order because they represent two of the subpoena recipients, Geofinance Limited ("Geofinance") and 1st BridgeHouse Asset Management, LLC ("BridgeHouse"). Carlton Field's efforts culminated in this Court's April 20, 2015 Order Granting In Part Motion for Relief from Seal and Gag Order [DE #56] (the "Order Unsealing").

Prior to the entry of the Order Unsealing, the Court excused Geofinance and BridgeHouse from responding to the subpoenas issued to them pending further Order [DE #23]. Also prior to entry of the Order Unsealing, the Court entered an Order Granting in Part Motion to Extend Discovery Stay [DE #31]. That Order set up a procedure which allowed the Trustee to receive and maintain documents produced by the subpoenaed parties, other than Geofinance and BridgeHouse, but did not allow the Trustee to review the documents pending further Order.

The Order Unsealing lifted the seal on most of the docket entries in this case, and lifted the gag on subpoena recipients thereby allowing them to communicate with subpoena targets about the subpoenas. Further it provided that documents produced to the Trustee pursuant to the gag subpoenas, but not yet reviewed by the Trustee, would be provided to Carlton Fields to give them

3

an opportunity to seek protective orders on behalf of their clients, the subpoena targets.

Two of the Debtors that were brought into the Petroforte bankruptcy case as Related Entities, Katia Rabello ("Rabello") and Securinvest Holdings, S.A. ("Securinvest") are targets of the discovery requested in the subpoenas. In addition, several third party non-Debtor entities that are affiliates of Rabello, Securinvest, or other Debtor entities are discovery targets. Now that the gag provisions have been lifted, Rabello, Securinvest, and several of the non-Debtor targets have sought protection from, and seek to quash, several of the subpoenas. As described more fully below, they argue that the subpoenas seek broad financial information about the non-Debtor targets that exceed the limits of discovery under 11 U.S.C. §1521(a)(4) and Fed. R. Bankr. P. 2004 ("Rule 2004").

On August 16, 2015, Rabello and Securinvest also filed a Motion to Dismiss Chapter 15 Proceeding or, in the Alternative, to Terminate Relief [DE #66] (the "Motion to Dismiss"). As an alternative to dismissal, under §1522, the Movants seek to terminate the relief granted to the Trustee under the Recognition Order authorizing the Trustee to conduct discovery. The Movants argue that the recognition of the Brazilian orders that brought Rabello and Securinvest and all of their assets into the Petroforte case would be "manifestly contrary" to the

4

public policy of the United States" because this relief violates
fundamental due process rights under the United States
Constitution and is relief that the Trustee could not have
obtained under the Bankruptcy Code.

The Motion to Dismiss will be denied. Although Rabello and
Securinvest were brought into the Petroforte case under
procedures different from those available under the Bankruptcy
Code, these differences do not render the Brazilian orders
manifestly contrary to United States ("U.S.") public policy or
justify terminating the Trustee's right to conduct discovery
under the standards in 11 U.S.C. §1522.

The discovery motions will be granted in part. Under
§1521(a)(4) and Rule 2004, the Trustee will not be permitted to
obtain and review documents relating to third party non-Debtors
that do not relate to transactions with Debtor entities  with
one important exception. For those targets in which a majority
of the stock is owned by a Debtor entity, broad financial
discovery will be permitted. The ownership interests of any of
the Debtors in non-Debtor targets are assets of the Petroforte
estate. If a Debtor owns a majority interest in Third Party
Target, the Trustee is entitled to all financial information of
any such Third Party Target in order to value this ownership
interest.

*The Pending Motions*

Pursuant to the Order Unsealing, Carlton Fields filed a Motion to Quash, or in the Alternative, for Protective Order, in Connection with Subpoenas *Duces Tecum* for Rule 2004 Examination Directed to Citigroup, Inc., Safra National Bank of NY and Espirito Santo Bank (the "First Discovery Motion") [DE# 62] and a Motion to Quash, or in the Alternative, for Protective Order, in Connection with Subpoenas *Duces Tecum* for Rule 2004 Examination Directed to UBS Bank USA, Bitran and Associates, P.A., and Standard Chartered Bank (the "Second Discovery Motion") [DE# 65]. The First Discovery Motion and Second Discovery Motion will be referred to collectively as the "Discovery Motions." As noted earlier, Rabello and Securinvest have also filed a Motion to Dismiss [DE# 66].

The Discovery Motions seek to quash or limit subpoenas (the "Subpoenas") served on several entities (the "Subpoenaed Parties"). The Subpoenas seek a broad range of documents relating to certain Debtor entities and certain third-party non-Debtor entities. The Movants in both of the Discovery Motions are two Debtors, Rabello and Securinvest, and the following non-Debtor entities (collectively, the "Movants"): Arnage Holdings Ltd., Banco Rural, Brooklands Holdings Ltd., Construtora Tratex S.A., Rural International, Inc., Rural Leasing S.A., Rural

6

Securities Inc., Sabino Correa Rabello, Trade Link Bank, and Trapezio S.A. (the "Third Party Targets").[1]

The Court conducted a preliminary hearing on all three motions on August 13, 2015. Prior to the August 13th hearing, the Trustee filed a response only to the Discovery Motions [DE #67]. The Court then entered its Order Setting Final Hearing and Briefing Schedule on Discovery Motions and Motion to Dismiss [DE #69] (the "Briefing Order") which set another hearing on October 7, 2015 on all three motions. Pursuant to the Briefing Order, the Trustee filed another response specifically addressing the Court's concerns at the August 13th hearing and responding for the first time to the Motion to Dismiss [DE #75] (the "Trustee's Supplemental Response"). Movants then filed a reply in support of all three motions [DE #76], which was amended to correct some scrivener errors [DE #77]. At the October 7th hearing the Court heard oral argument.

## Relevant Factual Background

Much of the history in this case is discussed in the Order Unsealing and the factual and procedural background in that Order is incorporated here by reference. By way of summary,

---

[1] Nora Rabello and Rural Securities International Inc. are also listed as Movants in the Discovery Motions but these two parties are not listed in the Discovery Motions as Debtors or non-Debtors [DE #62, p. 10].

Petroforte, when it was in operation, was the third largest gasoline and ethanol distributor in Brazil. DE #30 Ex. C p. 10. In August of 2000 Sobar S.A. Alcool e Derivados ("Sobar"), a company that was part of the Petroforte group, and Rural Leasing S.A., an entity that is part of a larger conglomerate of entities known as the Rural Group, entered into a lease-back transaction of an ethanol plant (the "Plant"). The Rural Group includes Banco Rural, a mid-sized Brazilian retail bank, and Securinvest, the entity through which the Plant transaction took place. The Plant transaction was later determined to be fraudulent and in large part responsible for the insolvency of Petroforte. *Id*. Ex. C pp. 10-11.

In Brazil, as described by the Trustee, bankruptcy courts allow trustees to pierce the corporate veil of a third party that did business with a bankrupt company. When the corporate veil is pierced, the assets of the third party are brought into the bankruptcy estate and are subject to that trustee's control. In order to do this, Brazilian trustees must prove that the business of the third party with the debtor occurred with the intent to defraud the creditors of the debtor and that the third party actually belongs to the same economic group as the bankrupt company. DE #66-3 p.9. As a result of the fraudulent lease-back transaction, several additional entities were brought into the Petroforte Estate, including Rabello and Securinvest,

8

and the Petrofore Estate is now comprised of approximately 278 companies and 71 individuals. *Id*. at 4.

The expansion of the insolvency proceedings to include Rabello, the alleged mastermind behind much of the wrongdoing the Trustee is investigating, and Securinvest, one of Rabello's many corporate entities and an integral part of the Plant transaction, were both done on an *ex parte* basis. The extension of the Petroforte Estate over Securinvest took place in 2007 and the extension over Rabello took place in 2010. Subsequent to the entry of the *ex parte* orders both Securinvest and Rabello exhausted all appeal options in Brazil challenging their inclusion in the Petroforte Estate and those orders are now final.[2] In their appeals, Securinvest and Rabello had the opportunity to present evidence in support of their argument against having the Petroforte proceedings extended to them. The appellate proceedings are discussed in greater detail later in addressing Movants' due process arguments.

In October of 2011, Rabello and Securinvest sought approval of a settlement which offered to essentially undo the fraudulent conveyance of the Plant by returning the Plant with additional land and improvements to the Petroforte Estate to make it whole (the "Proposed Settlement"). The Brazilian bankruptcy court approved the Proposed Settlement. In their manifest injustice

---

[2] See Order Unsealing pp. 9-10.

argument, Rabello and Securinvest rely heavily on the Brazilian
bankruptcy court's reasoning and its findings:

> It is offensive to this Court that the
> Bankruptcy parties [i.e. Securinvest and Ms.
> Rabello] be requested one penny more than
> what is correctly owed. Continuing in the
> unlimited accountability of the Bankruptcy
> parties, since the main object of the
> babbling [i.e. the SOBAR plant] is already
> in the possession of the Court, is a thesis
> that does not sail in calm seas.

DE #66, Ex. I, p. 6.

In part, Rabello and Securinvest want this Court to adopt
the Brazilian trial court's conclusion that extending the
bankruptcy to their assets in excess of the amounts necessary to
unwind the Plant transaction is so grossly unfair that it
violates U.S. due process protections and substantive provisions
in the Bankruptcy Code. A critical flaw in their argument is
that the trial court's order approving the Proposed Settlement
was appealed and on appeal, the appellate court, the Tribunal de
Justiça São Paulo ("TJSP"), reversed the trial court's order.

In overturning the order approving the Proposed Settlement,
the TJSP determined that the Proposed Settlement, which required
Rabello and Securinvest to only compensate the estate for losses
incurred in the Plant transaction, was not sufficient. The
appellate court stated that it would not shut down the Trustee's
investigations in Brazil or abroad:

10

in order to search for assets that can cover the debts of the Estate, considering the corporate web originated in the transaction with Sobar, and in order to be[sic] better define the effective asset liability of the appellants on[sic] the bankruptcy of Petroforte, **considering the solid <u>evidence</u> that the diversion was not limited to the transfer of the ethanol plant**.

DE #67-2 p. 102 (emphasis added).

Securinvest and Rabello unsuccessfully appealed the TJSP order overturning the bankruptcy court's order approving the Proposed Settlement to the Superior Tribunal of Justice ("STJ"). Securinvest and Ms. Rabello then filed a final appeal to the Supreme Federal Court ("STJ"), Brazil's highest appellate court. That last appeal is still pending but no stay is in effect.

### *The Motion to Dismiss*

Rabello and Securinvest seek dismissal of this case pursuant to 11 U.S.C. §1506, arguing that the Brazilian court orders extending the Petroforte bankruptcy over them are "manifestly contrary to the public policy of the United States." The Movants also argue that, pursuant to 11 U.S.C. §1522, this Court, in balancing the relative harm and benefit of this bankruptcy proceeding to all affected parties, should terminate the Trustee's rights granted in the Recognition Order.

Carlton Fields, acting on its own behalf, in its prosecution of its motion to lift the seal and gag provisions

which culminated in the Order Unsealing, previously asked this Court to dismiss this bankruptcy case pursuant to §1506. This Court, at that point, based on the record and briefing before it, rejected Carlton Fields' request. DE #56 pp. 6-7 ("Second, CFJB argues that this bankruptcy case and the discovery sought by the Trustee are manifestly contrary to the public policy of the United States pursuant to 11 U.S.C. §1506. This argument is rejected."). Carlton Fields did not appeal the Order Unsealing which determined that the filing and the continuation of this chapter 15 proceeding was not manifestly contrary to U.S. policy. Nevertheless, the Court will consider the issue *de novo* now that it has been raised and more fully briefed in the Motion to Dismiss.

The Motion to Dismiss argues that the Brazilian court orders extending the Petroforte estate to Rabello and Securinvest are manifestly unjust and contrary to U.S. law because Rabello and Securinvest could not have been brought in as debtors under U.S. law. Movants argue that under U.S. bankruptcy law there are two ways in which non-debtor parties can be brought into bankruptcy or brought into an existing bankruptcy case: 1) by the filing of an involuntary bankruptcy petition pursuant to 11 U.S.C §303; and/or 2) through

substantive consolidation.[3] The Movants also argue that the Brazilian bankruptcy court orders that extended the Petroforte case to Rabello and Securinvest were entered *ex parte* and therefore, in a manner completely devoid of the due process protections inherent in the Bankruptcy Code.

The Trustee, in response to both the manifest injustice argument and the §1522 balancing argument, argues that in their appeals Rabello and Securinvest were given due process and were able to present evidence and extensive argument. The Trustee argues further that under the Bankruptcy Code the process of substantive consolidation, rather than the involuntary bankruptcy process, is the more analogous procedure through which non-debtor parties can be brought into a bankruptcy case. Under U.S. law, like in Brazil, individuals can be held accountable for the debts of corporations if those corporations are determined to be the alter egos of the principals and the corporate veil is pierced. Therefore, because U.S. law has ways to bring non-debtor parties into bankruptcy, the recognition of a Brazilian insolvency case in which non-debtor parties were brought into bankruptcy, albeit through different procedures, is not manifestly contrary to U.S. public policy.

---

[3] There is a split in the law as to whether a court can substantive consolidate a third party non-debtor without first filing an involuntary petition pursuant to section 303.

As to Movants' alternative request for relief under §1522, the Trustee's argument can be summarized as follows: the benefit to the Petroforte creditors by the extension of the insolvency proceedings to Rabello and Securinvest, both of whom have been found "to have been involved in a sprawling, multi-layered frauds that caused and contributed to the bankruptcy of Petroforte" and the taking of discovery in this district as to their assets, far outweighs any prejudice to them. Trustee's Supplemental Response, DE #75 p.23.


Allowing the Trustee to Proceed with Discovery
in this Chapter 15 Case is not Manifestly Contrary to
U.S. Public Policy or Appropriately Limited by Section 1522

Section 1506 provides that recognition or other relief may be denied under Chapter 15 "if the action would be manifestly contrary to the public policy of the United States." To determine whether efforts by a foreign trustee are manifestly contrary to U.S. public policy courts consider "(1) whether the foreign proceeding was procedurally unfair; and (2) whether the application of foreign law or the recognition of foreign main proceeding under Chapter 15 would 'severely hinder United States bankruptcy court' abilities to carry out… the most fundamental policies and purposes' of these rights." *In re British Isle of Venice (BVI), Ltd.*, 441 B.R. 713, 717 (Bankr. S.D. Fla. 2010).

14

Both parties agree as to the standard but differ on its application to this case.

As discussed in the Order Unsealing, "[t]he narrow public policy exception contained in §1506 'is intended to be invoked only under exceptional circumstances concerning matters of fundamental importance to the United States.'" *In re Vitro S.A.B. de C.V.*, 701 F. 3d 1031, 1069 (5th Cir. 2012) *quoting In re Ran,* 607 F. 3d 1017, 1021 (5th Cir. 2010). Section 1506 is intended to protect "the most fundamental policies of the United States" H.R. 109-31(I) at 109. *See also In re RSM Richter Inc. v. Aguilar (In re Ephedra Products Liability Litig.)*, 349 B.R. 333 (S.D.N.Y. 2006) ("*RSM*").

The cases cited by the Movants in which courts have granted relief under §1506 are clearly distinguishable, including *In re Toft*, 153 B.R. 186 (Bankr. S.D.N.Y. 2011)("*Toft*") and *In re Gold & Honey, Ltd.*, 410 B.R. 357 (Bankr. E.D.N.Y. 2009)("*Gold*"). Those cases applied §1506 because the foreign orders at issue violated specific U.S. laws dealing with the same subject matter. In *Toft*, the German administrator asked for comity and enforcement in the U.S. of an order which violated U.S. wiretapping laws. In *Gold*, a creditor started a receivership proceeding in Israel against the debtors, who then, prior to the appointment of a receiver, filed for chapter 11 in the U.S. and sought and obtained from the U.S. bankruptcy court, over the

objection of this creditor, an order declaring that the automatic stay applied to the Israeli receivership proceeding. The creditor, notwithstanding the U.S. bankruptcy court's ruling, pushed in Israel for the appointment of a receiver, and a receiver was appointed. That receiver then came to the U.S. and tried to file a chapter 15 case. The Court in *Gold* declined to recognize the receiver and dismissed the chapter 15 case because the creation of the receiver was in itself a violation of the automatic stay. In contrast to *Toft* and *Gold*, in this case no U.S. laws have been violated.

Movants' due process argument relies heavily on the fact that the Brazilian bankruptcy court orders extending the bankruptcy to Securinvest and Rabello were entered *ex-parte*. The due process argument fails because Securinvest and Rabello were allowed to present both argument and evidence on appeal. After considering evidence and argument, the Brazilian appellate courts made specific findings of wrongdoing by both Rabello and Securinvest in relation to the Plant transaction and the subsequent efforts to cover up the fraud. As discussed in the Order Unsealing, Securinvest's cover-up efforts involved, among other things, the creation of documents to obfuscate the identity of the ultimate beneficial owner of Securinvest. DE #47 Ex. E p. 4-5. The Trustee, prior to uncovering that Rabello the ultimate beneficial owner of Securinvest, was misled at first to

16

target two small Costa Rican business owners who knew nothing of
Securinvest. *Id*. Ex. E pp. 5-6.

In extending the insolvency proceedings over Securinvest,
the Brazilian bankruptcy court made specific findings that the
Petroforte Group was intentionally undercapitalized with help
from the Rural Group: "[t]he disregard of a corporate veil of
all affiliated companies is suitable and the Bankruptcy of Grupo
Petroforte shall be extended to them due to the property
deviation and undercapitalization which the financial Group
performed with the accomplice Mr. Ari Natalio including the
management of Grupo Rural." DE #67-1, Ex. D, pp. at 9-17.

The Brazilian appellate courts, in reviewing the Brazilian
bankruptcy court findings, and after giving the affected parties
the opportunity to refute them, also found a common economic
group between the Petroforte Group and the Rural Group. The
TJSP, in the appeal of the order extending the Petroforte estate
to Securinvest, found that "the corporate chain described herein
shows the existence of a modus operandi that confirm the
influence of a group of companies (SECURINVEST GROUP, whether or
not [it] is part of the RURAL Group) over the other
(PETROFORTE)." DE #67-1, p. 76.

Recognition of *ex parte* orders entered in Brazilian
bankruptcy cases is not an issue of first impression in chapter
15 cases. In *In re OAS S.A.* 533 B.R. 83 (Bankr. S.D.N.Y.

2015)("*OAS*"), the court addressed issues similar to the ones now before this Court. In that chapter 15 case, the bankruptcy court was asked to enforce a Brazilian order entered *ex parte* in the foreign insolvency proceeding which consolidated the bankruptcy estate of several affiliated companies. Various disgruntled note holder creditors of one of the debtors objected and fought the consolidation because they would receive less on account of their notes because the entity which owed them money had funds which would result in a larger distribution to them if the bankruptcy estates were administered separately. The U.S. bankruptcy court in *OAS* found that "due process is satisfied because these *ex parte* proceedings and orders are subject to *ex post* review, just as the consolidation order has been subject to *ex post* review." *In re OAS*, 533 B.R. at 105. The court also held that "although Brazilian law may impose different requirements for substantive consolidation, the different standards, standing alone, do not signify that Brazilian Bankruptcy law is manifestly contrary to our own public policy." *Id*.

The TJSP orders affirming the Brazilian bankruptcy court orders contain findings of a common economic group between the Rural Group and the Petroforte Group. It is true that under the Bankruptcy Code there would have been evidence presented and a hearing held, with the participation of all affected parties, prior to the consolidation. In this case, in Brazil, that

18

opportunity was provided at the appellate level. Like the Court in *OAS*, this Court finds that different requirements in Brazil for obtaining relief available in the U.S. do not render the extension of the Petroforte estate over Rabello and Securinvest manifestly contrary to U.S. policy.

The foundation of the Movants' argument is that it is disproportionate and unfair to bankrupt non-debtor third parties for what amounts to one fraudulent transfer. The Movants, in their Motion to Dismiss, make use of the following analogy to describe what they claim has occurred: the extension of the bankruptcy proceedings to Rabello and Securinvest is like "Warren Buffet being placed into a bankruptcy because one of his companies participated in a fraudulent transfer with a bankrupt company." This analogy would perhaps be persuasive if Mr. Buffet's entire fortune was brought into a foreign proceeding based solely upon a single fraudulent transfer received by one of his companies. But that is not even close to what has actually happened in Petroforte's bankruptcy case. As the record reflects, the Brazilian courts have made specific findings of wrongdoing by Rabello, Securinvest, and others that go well beyond the single fraudulent conveyance of the Plant. Dismissal under §1506 is unwarranted.

Alternatively the Trustee seeks relief under §1522 which requires a balancing of the interests of Debtors, creditors, and

other interested parties. "The court may grant relief under section 1519 or 1521, or may modify or terminate relief under subsection (c), only if the interests of the creditors and other interested entities, including the debtor, are sufficiently protected." 11 U.S.C. §1522. Application of §1522 here does not support the termination of the relief granted to the Trustee in the Recognition Order.

In *Jaffe v. Samsung Elec. Co.*, 737 F.3d 14 (4th Cir. 2013)("*Jaffe*") the Fourth Circuit upheld a bankruptcy court's decision not to recognize an order in the foreign proceeding allowing the Debtor to reject contracts with licensees because that relief is expressly barred under U.S. law by §365(n) of the Bankruptcy Code. That section allows licensees to retain their rights under intellectual property licenses if the license is rejected. In *Jaffe*, the Fourth Circuit did not determine that recognition would be manifestly contrary to U.S. policy pursuant to §1506, but rather, through §1522, balanced the Debtor's interest of maximizing profits through renegotiating contracts with licensees with the interest of these licensees, who "'would face both the immediate harm of a hold-up and the future… destabilization of the licensing regime in the semiconductor industry.'" *Jaffe v. Samsung,* 737 F.3d at 29.

Similarly in *In re Vitro S.A.B. de C.V.*, 701 F.3d 1031, 1069 (5th Cir. 2012)("*Vitro*"), the Fifth Circuit dodged the

§1506 issue, and ruled that the bankruptcy court did not abuse its discretion in applying §1507(b)(4) and declining to enforce a Mexican insolvency plan which released third party guarantors of their guarantees. The Fifth Circuit in *Vitro* also noted that the bankruptcy court's decision not to enforce the plan was proper under §1522 for the same reasons that supported its §1507 conclusion. *In re Vitro*, 701 F.3d at 1060.  The Fifth Circuit also discussed the bankruptcy courts reliance on 11 U.S.C. §524(e), which states that "discharge of a debt of the debtor does not affect the liability of any other entity on ... such debt." *Vitro* is relevant here for two reasons: First, it explicitly states that decisions under both §1522 and §1507 are discretionary; and second, as in the §1506 cases discussed earlier, a specific Bankruptcy Code section (§524(e) in *Vitro* like §365(n) in *Jaffe*), would have barred the relief entered in the foreign proceedings which the Trustee sought to enforce in the chapter 15 case.

In this case, the only Bankruptcy Code section that would arguably prevent the Trustee from obtaining the same relief he obtained in Brazil is §303, which provides the elements for involuntary bankruptcies. However, §303, unlike §524(e) or §365(n), does not explicitly bar the relief the Trustee sought and obtained in Brazil against Rabello and Securinvest. It simply sets different requirements. Further, this Court agrees

21

with the Trustee that substantive consolidation, and not involuntary bankruptcy, is more analogous than §303 to the extension of the Petroforte Estate over Rabello and Securinvest in Brazil. In balancing the interests of the creditors, Ms. Rabello, and Securinvest, this Court finds that it is appropriate to recognize the Brazilian court decisions in this case which, after affording both Rabello and Securinvest due process, found a common economic group between them and the Petroforte Estate, ultimately resulting in the extension of the Petroforte Estate over them.

## The Discovery Motions will be Granted in Part

The Movants in the Discovery Motions, which include Rabello and Securinvest, along with several of the Third Party Targets, seek to quash the Subpoenas pursuant to Fed. R. Civ. Proc. 45(d)(3)(A)(iii).[4] They argue that the Subpoenas exceed the scope of discovery that the Trustee is allowed to conduct in the U.S. pursuant to 11 U.S.C. §1521(a)(4). In the alternative, if the Subpoenas are not quashed in their entirety, the Movants seek a protective order limiting disclosure of the discovery to the Trustee and Trustee's counsel, with no produced document made public, and limiting the use of any produced document to the

---

[4] This rule is made applicable in bankruptcy cases pursuant to Fed. R. Bankr. P. 9016.

Petroforte insolvency proceeding. The Movants also request that all discovery be abated pending the final appeal of the TJSP order disapproving the Proposed Settlement.

First, the request to abate discovery pending the outcome of the appeal of the Plant settlement requires only brief comment. This Court already ruled in the Order Unsealing that although the Proposed Settlement appeal is still pending, "the Petroforte Estate, as it stands now, encompasses Katia Rabello, Securinvest, and all of the other parties that were brought in based upon the wrongful Plant transaction." DE #56, p.10. Because there is no stay pending appeal, the Court finds no cause to abate or stay discovery pending the outcome of the Proposed Settlement appeal.

A second issue is whether the scope of discovery should be governed by §1521 of the Bankruptcy Code or by Rule 2004. The Movants cite to *In re Glitnir banki hf*. 2011 WL 3652764 (Bankr. S.D. New York, August 19, 2011)("*Glitnir*") for the proposition that the Court should not allow discovery pursuant to Rule 2004, because ultimately section 1521 is the controlling code section in chapter 15 discovery matters, and the discovery sought is beyond §1521's scope.

*Glitnir* does not hold that Rule 2004 is inapplicable in chapter 15. It simply clarifies that any discovery pursuant to Rule 2004 should conform to the limits of section 1521, the

23

controlling code section. Further other courts, like the one in *In re Millennium Glob. Emerging Credit Master Fund Ltd.*, 471 B.R. 342 (Bankr. S.D.N.Y. 2012) ("*Millennium*") in discussing *Glitnir*, cite to 11 U.S.C. §1507(a), which allows bankruptcy courts to "provide additional assistance to a foreign representative under this title [the Bankruptcy Code] or under other laws of the United States." The *Millennium* court explained that:

> Additional assistance can be provided by making Bankruptcy Rule 2004 fully applicable… [O]ne of the main purposes of chapter 15 is to assist a foreign representative in the administration of the foreign estate… which would militate in favor of granting a foreign representative broad discovery rights using the full scope of Rule 2004."

471 B.R. at 348. The Court agrees with the interpretation in *Millennium* and finds that Rule 2004 is applicable in this chapter 15 case. Moreover, the Court finds that its rulings on the Discovery Motions would be the same whether the Court applied §1521 or the arguably broader discovery rights under Rule 2004.

Turning to the scope of the Subpoenas, broad discovery is appropriate as to the Related Entities because they are Debtors. Pursuant to §1521(a)(4), the Recognition Order grants the Trustee authority to "examine witnesses, take evidence or seek the delivery of information concerning the assets, affairs,

rights, obligations or liabilities of Petroforte and the Related Parties." DE #7, p.5. Thus, as to the Related Entities, the Subpoenas and the broad discovery sought by the Trustee fall squarely within the boundaries of section 1521(a)(4).

The Trustee argues that he is also entitled to cast a wide discovery net over the Third Party Targets. Although not Debtors, he argues that the Third Party Targets are inextricably intertwined with the Petroforte insolvency proceedings since they are partly or wholly owned by, or are affiliates of, Debtor entities including, in particular, Rabello. At the August 13th preliminary hearing and in its Briefing Order, the Court directed the Trustee to "set forth the factual basis for seeking discovery of documents relating to non-Debtor targets other than documents reflecting transactions between the non-Debtor targets and one of the Debtor entities." DE #69, ¶3. In the Trustee's Supplemental Response, the Trustee discussed the relationship of each Third Party Target to the Debtor entities. After examining this factual basis and for the reasons discussed below, the Court finds that the Trustee is presently entitled to only limited discovery as to most of the Third Party Targets.

The Trustee's Supplemental Response failed to establish any actual involvement in the Plant transaction or any wrongdoing by any of the Third Party Targets. The Trustee does allege that many of the Third Party Targets are partly or wholly owned by a

Petroforte Debtor, including Rabello. For the reasons discussed below, if a Debtor entity owns a majority of the stock in any Third Party Target, broad discovery of that target's financial affairs is appropriate.

Bankruptcy courts routinely allow Trustees to conduct discovery as to non-debtor third parties in which a debtor owns a controlling interest of the stock in order to determine the value of the stock. This allows the Trustee to determine whether the stock, which is an asset of the estate, has sufficient value to induce the Trustee to take control of the entity, and attempt to derive value by selling or liquidating the entity.

Bankruptcy Rule 2004 is drafted broadly. It provides that the "examination of an entity under this rule or of the debtor under §343 of the Code may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate." Discovery to determine the value of the Third Party Targets' stock clearly falls within this broad mandate if the majority of the stock is owned by a Debtor entity.

Case law supports this conclusion. For example, in *In re Buerge*, 2014 WL 1309694 (10th Cir. BAP Apr. 2, 2014) the chapter 7 trustee sought to sell encumbered stock owned by the estate over the objection of the debtor who moved the court to compel

the trustee to abandon the stock instead. In discussing the evidentiary burden, the court stated that "[w]hile the Trustee bore the burden to prove the proposed price was fair, which in turn required proof of the Stock's value to support his proposed sale to Prime, the Debtor bore an independent burden to prove the Stock's value for abandonment." *In re Buerge*, 2014 WL 1309694 at *19. The evidentiary burden placed on the Trustee to determine the value of stock therefore entitles the Trustee to discovery as to the general economic affairs and status of these Third Party Targets if one of the Debtor entities in the Petroforte estate owns a majority of shares in these Third Party Targets.

The Court is requiring proof that a majority stock interest is owned by a Debtor entity to justify broad discovery for two practical reasons. A minority stock interest is still property of the estate and certainly, the Trustee is entitled to any dividends that are payable to shareholders. However, it is extremely unlikely that the broad discovery sought from the third parties who received Subpoenas would contain any information relating to dividends issued, or to be issued, by a Third Party Target. Moreover, if only a minority stock interest is owned by a Debtor, it is unrealistic to expect that the Trustee, as a minority shareholder in a Third Party Target, could take control of the entity or monetize the minority

ownership interest. On the other hand, if the Trustee can step into the shoes of a Debtor owning a majority interest in a Third Party Target, he could take control of, and sell the entity, or liquidate its assets if, through discovery, he determines that there is value in the equity interest.

So the question is, has the Trustee demonstrated that Rabello, Securinvest, or any other Related Entity owns a majority interest in any of the Third Party Targets? The record in this case establishes that two of the Third Party Targets, Arnage Holdings, Ltd. ("Arnage") and Brooklands Holdings Ltd. ("Brooklands"), are 100% owned by Debtor Rabello. As cited by the Trustee in his Supplemental Response, in affirming Rabello's status as a bankrupted party, the TJSP found that "Ms. Rabello is the 'owner and controller of offshores' Arnage and Brooklands." Trustee's Supplemental Response, DE #75, p. 29, citing TJSP ruling in DE #74, Ex. 6.

The record also establishes that the Debtors own a majority stake in Third Party Target, Trapezio, S.A. ("Trapezio"). The requisite level of ownership and control is evident from relief granted in Brazil pursuant to the Trustee's Discovery and Seizure Request [DE #75 Ex. P]. The order approving the Trustee's request not only froze the stock owned by Rabello in Trapezio. It also authorized the Trustee and his representatives to analyze "all of the company's corporate and accounting

documentation, such as accounting records, ledgers, checking accounts, financial transactions, and other measures for the exclusive purpose of appraising their financial results to guarantee the interests of the bankruptcy assets." DE #75-2, p. 86. Trapezio is the only third Party Target included in the above-referenced relief granted in Brazil. The Court finds that this Brazilian order establishes sufficient ownership and control by Rabello in Trapezio to allow broad discovery to enable the Trustee to determine the value of the stock as an asset of the estate. The Court is not ruling, however, that it would necessarily give comity to other discovery orders entered in Brazil authorizing broad discovery of other Third Party Targets.

As to the remaining Third Party Targets, the Court does not find record evidence that Rabello or any other Debtor entity owned a majority interest of the stock. The Trustee's Supplemental Response cites to evidence about the relationship between several of the Third Party Targets and their activities under the broad umbrella of the Rural Group, but the Court did not find clear evidence to support the Trustee's assertion that Rabello was the "ultimate beneficial owner" of Third Party Targets like Banco Rural.

Finally, as to Third Party Target, Sabino Correa Rabello, the alleged predecessor to Katia Rabello in the Rural Group

prior to his death in 2000, the Trustee has not established any reason to seek broad discovery other than the following conclusory statement: "any attempt to distinguish Ms. Rabello from Mr. Rabello as to the facts relevant hereto is a merely illusory, with no substance in fact." DE #75 p.34.

Therefore, unless and until the Trustee proves that the estate owns more than 50% of the stock in a Third Party Target, the documents produced by Subpoenaed Parties relating to Third Party Targets are discoverable only if the documents relate to transactions actually involving Petroforte Debtors. If, in future filings, the Trustee can prove to the Court that the Petroforte Estate owns more than 50% of the stock in any of the other Third Party Targets, then the Trustee will be entitled to broad financial discovery as to those Third Party Targets.

### *Other Issues Raised in the Discovery Motions*

The Movants seek to limit discovery to two years prior to service of the subpoenas. This issue was addressed at the August 13th hearing, and the Court stated that the discovery "should really include documents for the time period starting from or even a little bit before the -- the bankruptcy because we're dealing with ten or 12 years of history, which includes postpetition transactions." DE #72 p.38. Movants have presented no persuasive arguments to impose a shorter limitation. In fact,

because the Plant Transaction occurred in 2000, the Court finds that discovery should be allowed to reach back to the year 2000. Movants' counsel who reviewed all of the documents produced by Subpoena Parties stated at the October 7th hearing that no documents date back earlier than 2000. DE #75, p.114. Moreover, as argued by Trustee's counsel, the Movants have no standing to argue that allowing discovery back to 2000 is burdensome on them. Therefore, no documents already produced will be protected based on a time restriction and this Order will require BridgeHouse and Geofinance to produce documents from January 2000 to the present.

The last issue is Movants' request to limit the discovery obtained in this case for use only in the Petroforte insolvency proceedings in Brazil. This issue was the subject of limited briefing and little or no oral argument. The Court finds that, for now, the Movants request will be granted in part without prejudice to the Trustee's right to seek relief from the restrictions set forth in paragraph 7 below.

## Conclusion

Recognizing Petroforte's bankruptcy case and granting the Trustee relief to conduct discovery in this jurisdiction is not manifestly contrary to U.S. public policy. Further, in balancing the interest of the Debtors, creditors, and the Third Party

Targets under §1522, the Court will not limit the relief granted to the Trustee in the Recognition Order. The Trustee is entitled to broad discovery relating to any Debtor entities or Third Party Targets whose stock is majority owned by a Debtor. As to other Third Party Targets, discovery is properly limited to transactions between these targets and any Debtor entity. Therefore, it is-

**ORDERED** as follows:

1.   The Motion to Dismiss is denied.

2.   The Discovery Motions are granted in part and denied in part as provided below.

3.   Except for the limitations on use of the discoverable documents set forth in paragraph 7 below, the Discovery Motions are denied as to the Debtors, Securinvest and Katia Rabello, and as to Third Party Targets, Arnage Holdings, Ltd., Brooklands Holdings, Ltd., and Trapezio S.A. Upon the finality of this Order, the Trustee may review all documents produced by the Subpoenaed Parties (the "Produced Documents") that relate to these parties and all documents that relate to these parties that are produced by Geofinance and BridgeHouse as required by paragraph 6 of this Order.

4.   The Discovery Motions are granted in part with respect to documents relating to all of the other movants who are Third Party Targets, namely Banco Rural, Construtora Tratex S.A.,

Rural International, Inc., Rural Leasing S.A., Rural Securities Inc., Sabino Correa Rabello, and Trade Link Bank.

5.    Upon finality of this Order, Carlton Fields may remove from the Produced Documents, all documents relating to the Third Party Targets named in paragraph 4 except for documents that relate to transactions between these Third Party Targets and any one of the Debtor entities, including the Related Entities. This includes any documents reflecting wire transfers in which funds were wired to or from a Debtor entity, including any Related Entity.

6.    No later than 21 days after this Order becomes final, Geofinance and BridgeHouse shall produce all documents described in the Subpoenas subject to the limitations in this Order. Specifically, as to the parties described in paragraph 3 above, Geofinance and BridgeHouse shall produce all documents described in the Subpoenas dated on or after January 1, 2000. As to documents relating to the other Third Party Targets, Geofinance and BridgeHouse shall limit production to documents dated on or after January 1, 2000 that refer or relate to transactions between these parties and any one of the Debtor entities, including any one of the Related Entities.

7.   Documents released for review or later furnished to the Trustee pursuant to this Order are subject to the following restrictions:

A.   The documents may be reviewed only by the Trustee or his attorneys;

B.   The documents may be used only in proceedings in the Pretroforte case in Brazil, in further proceeding in this chapter 15 case, or in other proceedings filed in other courts by the Trustee as part of his administration of the Petroforte Estate.

### 

COPIES TO:
Gregory S. Grossman, Esq
1001 Brickell Bay Drive
9th Floor
Miami, FL 33131

Donald Kirk, Esq.
4221 W. Boy Scout Blvd., #1000
Tampa, FL 33607

Thomas Meeks
100 SE Second Street, Suite 4200
Miami, Florida 33131